JAMES H. HEWETT, Administrator, *vs.* FRANCES E. HURLEY.

Knox.   Opinion February 11, 1896.

*Trust.   Equity.   Law.   Evidence.*

The administration of a trust fund may be directed or controlled in equity.

The plaintiff's intestate, shortly before his death, gave his daughter a check of one thousand dollars for a monument fund.   *Held*; that the fund cannot be recovered by the administrator in an action at law and the trust thereby destroyed.

The plaintiff claimed that the check was void from incapacity of the maker. *Held*; that this fact must be shown by evidence; that the jury must judge from facts, not from opinions stated as conclusions of facts drawn from other facts.

This was an action for money had and received in which the presiding justice ordered a nonsuit and the plaintiff excepted.

The case appears in the opinion.

*D. N. Mortland and M. A. Johnson,* for plaintiff.

The action for money had and received is an equitable action and requires no privity of contract to support it, except what results from defendant's having money of the plaintiff which in equity he ought to pay over to him.   *Concord* v. *Delaney,* 58 Maine, 309 ; *Lord* v. *French,* 61 Maine, 420 ; *Howe* v. *Clancey,* 53 Maine, 130.

It is well settled that "a nonsuit will not be ordered, when there is any evidence competent to be submitted to a jury." *Union Slate Co.* v. *Tilton,* 69 Maine, 245 ; *Page* v. *Parker,* 43 N. H. 363.

It certainly cannot be said that the plaintiff offered no evidence. The check itself, especially in connection with the testimony of the attending physician, Dr. Hitchcock, as to the deceased's mental capacity, raises a suspicion of fraud on its face. The check itself shows that it was not a payment, because the defendant is named therein as a trustee and the amount is designated as a fund. A fund is stock or capital for certain purposes. Men with ordinary intelligence would not be likely to attempt to appoint a trustee and designate a certain fund and the purposes for which it is to be used, all in an ordinary bank check. This check, as it shows upon its face, was not drawn by Samuel Pillsbury but by the defendant herself.

Note the language written by this defendant in the check: "For a monument fund, to act without bonds." Is that language sufficient to designate the object for which the money was to be used? What monument? Whose monument, or was it monuments in general? Or was it nothing at all but a deception and fraud committed upon a dying man?

Even if there were no evidence of mental incapacity on the part of Samuel Pillsbury at the time, the document itself shows an illegal transaction so far as the purported intention goes. But it does show this fact, that the defendant has got one thousand dollars of the money that rightfully belongs to the estate and has converted it to her own use. *Tobey* v. *Miller*, 54 Maine, 480 ; *Allen* v. *Kimball*, 15 Maine, 116.

It was in violation of the statute of wills.

*W. H. Fogler*, for defendant.

The check raises no presumption of any liability of the defendant to the drawer or to his estate. There is no such presumption even in the case of a check in the ordinary form. 2 Parsons on Notes and Bills, 84. The check in the case at bar, on its face, negatives any presumption of liability on the part of the defendant to pay the amount therein named or any part of it.

The check upon its face purports to be drawn to provide funds for a monument for the drawer and his family. The presumption which the check carries with it is not rebutted, nor is there any attempt to refute the presumption.

The question on the issue of the drawer's capacity was not whether he was capable of transacting business, but whether he was capable of understanding and reasonably comprehending the act performed by him, the transaction of this check. This was an act testamentary in its nature, the act of a man upon his death-bed, making arrangement for the erection of a suitable monument for himself and family.

The lowest amount of capacity requisite to the execution of a valid will, is that the testator was able to comprehend the transaction. 1 Redf. Wills, 125.

A less degree of mind is requisite to execute an act of that nature than a contract. Id. p. 126. If the testator was incompetent to make a valid contract, yet if he had the capacity to know his estate, the object of his affections, and to whom he desired to leave his property, his will must stand. Id. See *Whitney* v. *Twombly*, 136 Mass. 145 ; *Converse* v. *Converse*, 21 Vt. 168.

An amusing, but accurate definition of testamentary capacity is laid down in Swinburne on Wills, p. 2, par. 4, as follows : " If a man be of mean understanding, neither wise nor foolish, but indifferent as it were between a wise man and a fool ; yea, though he rather incline to the foolish sort, so that for his dull capacity he may be termed grossum caput, a dunce, such a one is not prohibited to make a testament, unless he be yet more foolish, and so very simple and sottish that he may easily be made to believe things incredible or impossible, as that an ass can fly, or that trees did walk, beasts and birds could speak, as it is in Æsop's Fables."

Extreme old age, even when accompanied by disease and great suffering, is not sufficient evidence of testamentary incapacity.

The plaintiff undertakes the burden of removing the presumption of sufficient capacity on the part of his intestate to perform an act which in itself is not only reasonable and proper, but which under the circumstances of the case is such an act as the brightest intellect would naturally dictate.

This burden is not sustained by the testimony of a physician,

himself not even an expert in questions of mental capacity, that he does not think the man performing such act was capable of transacting business.                    (v

SITTING : WALTON, FOSTER, HASKELL, WHITEHOUSE, WIS-WELL, STROUT, JJ.

HASKELL, J.  Samuel Pillsbury died February 6, 1890.  On January 28, previous, he signed a check payable to his daughter, Frances E. Hurley, of the following tenor : "Rockland, Me., Jan. 28, 1890.  Pay to the order of F. E. Hurley, Trustee, one thousand dollars for a monumental fund.  To act without bonds."

The check was afterwards paid to the trustee.  The administrator of Pillsbury brings assumpsit against the payee of the check for money had and received.  A nonsuit was ordered below, and the case comes up on exceptions.

The check created a trust in the daughter for a specific purpose, and she may in equity be compelled to administer the same, but the fund cannot be recovered from her in an action at law by the adminstrator and the trust destroyed.  As to the creation of trusts, see *Bath Savings Institution* v. *Hathorn*, 88 Maine, 122.

It is contended that the check is void from the incapacity of the maker to execute the same.  If this were so, the contention might be sound, but it must be shown by evidence.  The only witness called was the physician attending him during the last fourteen days of his life, and that witness does not pretend to have been present when the check was made, nor does he describe the mental condition of the maker at that time or at any other time.  He says that the patient was afflicted with "disease of the kidneys, and diseases incident to old age — wearing down," and that for fourteen days prior to his death, it was necessary to administer morphine ; and that he did not think during that time the patient was capable of transacting business.  Purely an opinion of no legal consequence.  If the check would be avoided for incapacity of the maker, his condition should be shown, so that a jury might judge of the capacity for themselves.  They

must judge from facts, not from opinions stated as conclusions of fact drawn from other facts. A resultant fact drawn from other facts is to be sometimes found by the jury, and sometimes by the court as circumstances may require. *Lasky* v. *C. P. R. Co.* 83 Maine, 461; *Morey* v. *Milliken*, 86 Maine, 481. It is not to be proved directly by witnesses in the form of an opinion. *Hall* v. *Perry*, 87 Maine, 569.

*Exceptions overruled.*