### SAPP et al. v. HOUSTON NAT. EXCH. BANK. (No. 465—4000.)

(Commission of Appeals of Texas, Section B. Nov. 26, 1924.)

**1. Trusts ⊜➡34(1), 58—Deposit in bank held express trust for construction of oil filling station, not subject to change by oil company.**

Where the inhabitants of a city subscribed to stock of a refining company under agreement that the money was to remain in a local bank to be used in construction of filling station by the company, fund so deposited was impressed with express trust, terms of which the refining company could not change without stockholders' consent.

**2. Trusts ⊜➡345—Contractor held entitled to enforce trust for construction work, although not subscriber to trust fund.**

Where funds arising from subscriptions to stock of refining company were deposited in local bank in trust for construction of filling station by company, contractor subsequently selected to build station could enforce trust as against objection that not being a subscriber to the fund he was not in privity with the subscribers.

**3. Garnishment ⊜➡85—Persons not adversely interested held not necessary parties.**

Where refining company's stockholders procured funds paid for stock to be deposited in local bank in trust for construction of filing station by a contractor to be subsequently chosen by company, held, in garnishment proceedings against bank by contractor to acquire possession of fund, that stockholders were not necessary parties; they not being adversely interested to contractor or to bank.

**4. Banks and banking ⊜➡130(1) — Assignee of certificate of deposit representing trust funds held not entitled to recover as against beneficiary.**

Where money collected on subscriptions to stock of refining company was under agreement with company deposited in trust in garnishee bank to pay for construction of filling station, and certificate of deposit, reciting it was not negotiable, was issued to refining company, and by it turned over to another bank, which held it as assignee, with actual knowledge of terms of trust, such other bank could not recover fund as against contractor, in view of Rev. St. 1911, arts. 583, 584, it not holding certificate as innocent purchaser, and, with its assignor, being estopped to claim validity of assignment.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by T. M. Sapp against the Columbian Refining Company and the Planters' National Bank, garnishee, in which garnishee impleaded the Houston National Exchange Bank of Houston. Judgment for plaintiff was reversed on the Houston National Exchange Bank's appeal (252 S. W. 299), and plaintiff and others bring error. Reversed, and judgment of district court reformed and affirmed.

Spivey, Bartlett & Carter, of Marlin, for plaintiffs in error.

Love, Wagner & Wagner, of Houston, for defendant in error.

POWELL, P. J. The nature and result of this cause in the trial court have been well stated by Justice Jenkins, in the first majority opinion of the Court of Civil Appeals, as follows:

"Findings of Fact.

"The plaintiff T. M. Sapp sued out a writ of garnishment on September 30, 1920, ancillary to a suit filed on the same date against the Columbian Refining Company; the amount sued for by plaintiff being the sum of $2,000. Said writ of garnishment was directed to the Planters' National Bank of Rosebud, Tex., and was served on said bank on the day of issuance. Judgment was thereafter rendered in favor of plaintiff against Columbian Refining Company for $2,000, with interest from ——, which judgment remained unpaid at the time of trial of the garnishment proceedings, and at the time of entering judgment therein. Garnishee, Planters' National Bank, filed an answer on January 8, 1921, admitting that at the time of service of said writ there was on deposit at said bank to the credit of the Columbian Refining Company the sum of $2,000, represented by garnishee's certificate of deposit No. 511, dated July 8, 1920, and reciting that said amount was due three months after date, and that said instrument was nonnegotiable. Garnishee impleaded Houston National Exchange Bank on an allegation that said bank claimed to hold said certificate of deposit as its property. Garnishee's answer showed no indebtedness or lia-

⊜➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

bility on its part other than as represented by said deposit of $2,000. Garnishee bank became the depository of the $2,000 under the following circumstances: The Columbian Refining Company proposed to erect a gasoline and oil filling station in the town of Rosebud, and desired to have citizens of that town become interested in said enterprise, representing to certain citizens of said town that, if they would buy stock, said company would erect the filling station in part with the money thus raised locally. It was understood and agreed between the agents of Columbian Refining Company and said Rosebud purchasers of stock that their money would all be used in the erection of said filling station, and that none of said money would leave said town, but would be deposited in the Planters' National Bank and kept there until paid out for the construction of said filling station; that said agreement and arrangement was communicated to said bank, and something over $4,000 was deposited in said bank in pursuance of said agreement. The bank issued its time certificate of deposit to Columbian Refining Company, and, on representations of the latter's agent that the money would remain there some time before used in the construction of said filling station, the bank agreed to pay 3 per cent. interest on said deposit. Said certificate contained the statement: 'This certificate is not subject to check, and is not negotiable.' Thereafter, and before maturity of said certificate of deposit, the Houston National Exchange Bank became the owner of said certificate of deposit by purchase of same for value from the Columbian Refining Company, said Houston bank having no notice of any infirmity or interest in said fund in any third party except in so far as charged with notice by reason of the provision in said certificate above quoted. When said certificate became due, demand was made on the Planters' National Bank by Houston National Exchange Bank for payment of same, and payment was refused on account of the special agreement as to the purpose and disposition of said fund as above set forth. At this time the filling station had not been constructed. Thereafter, the Columbian Refining Company having purchased and shipped material to Rosebud for the construction of said station, a part of said fund was paid out and a new certificate for the balance of $2,000 issued in the name of the Columbian Refining Company, and forwarded to the Houston National Exchange Bank. Columbian Refining Company then entered into a contract with plaintiff T. M. Sapp for the construction of the said filling station, representing to him that the money was in the bank and he could get it; the money referred to being the balance on deposit in the Planters' National Bank. Plaintiff was told by Columbian Refining Company's agent that said money was in said bank and was put in there for the purpose of paying said contract price. Based upon said representations, plaintiff agreed to construct said filling station for the sum of $2,000, and did so in full compliance with his contract. Planters' National Bank understood that said fund, when deposited, was to be used for purchasing material, and for the erection of said filling station. Upon completion of said station plaintiff drew upon the Columbian Refining Company through the Planters' National Bank for the amount agreed to be paid him,

and, after Columbian Refining Company had failed to pay said draft, plaintiff entered suit, and had the writ of garnishment served on said Planters' National Bank.

"The foregoing findings of fact by the trial court are sustained by the evidence, and are adopted by us with this addition:

"At the time the contract was entered into between the Columbian Refining Company and Sapp for the erection of the filling station, and the agent of the refining company represented to Sapp that the money to pay for erecting the station was in the bank and he could get it, the cashier and agent of the bank was present and assented to such statement. The agent of the refining company referred to the $2,000 balance paid by citizens of Rosebud, to be held in trust by the bank for the purpose of paying for the erection of the filling station, and the cashier of the bank so understood.

"The contract with Sapp for the erection of the filling station was made a few days prior to the issuance of the $2,000 certificate. The Houston bank, at the time the $2,000 certificate was issued, knew of the agreement of the refining company to leave the money paid by the citizens of Rosebud for stock in said company, in the Rosebud bank, and to use the same in payment for the construction of the filling station and for no other purpose.

"Sapp had no knowledge of any claim of the Houston bank on the money in the Rosebud bank, when he made the contract to erect the filling station.

"The certificate for $2,000, involved in this appeal, read as follows:

"'July 8, 1920.    $2,000.00.    The Planters' National Bank, Rosebud, Texas. No. 511. This certifies that Columbian Refining Company has deposited in this bank $2,000 payable to the order of themselves in current funds on the return of this certificate properly indorsed, three months after date with interest at 3 per cent. per annum, for the time specified. This certificate is not subject to check and is not negotiable. [Signed] E. A. Donaldson, Cashier. No interest after maturity.'

"The original certificate for $4,100 was the same in all respects as the above certificate, except as to date, number, and amount.

"E. A. Donaldson, cashier of the Rosebud National Bank, was one of the citizens of Rosebud who subscribed for stock in the Columbian Refining Company, under the agreement that the same should be deposited in said bank and expended in the construction of the filling station.

"The court filed the following conclusions of law:

## "'Conclusions of Law.

"'By virtue of the representations and agreement between the Columbian Refining Company and the persons from whom said fund was raised the deposit of $2,000 in the Planters' National Bank became a trust fund, which was received by said bank as such, and intended and agreed to be expended for the construction of the filling station, and the parties to said agreement had a right to demand that said fund be so applied, and the Houston National Exchange Bank acquired said certificate of deposit subject to the carrying out of the said agreement; that the transaction between Columbian Refining Company and the plaintiff Sapp with reference to said fund amounted to an assignment of same

to said plaintiff. I therefore conclude that the plaintiff is entitled to recover said $2,000 fund, and to recover of defendant Houston National Bank all costs herein.'

"Judgment was rendered in accordance with said conclusions of law.

"Opinion.

"Appellee Sapp filed suit against the Columbian Refining Company for $2,000, the price agreed to be paid to him for erecting a filling station at Rosebud, Tex., and at the same time he sued out a writ of garnishment against the Rosebud Bank. He afterwards obtained judgment against the refining company for the amount sued for.

"The Rosebud Bank answered, among other things, that it held $2,000 on deposit in the name of the refining company. Had it not further answered, of course, Sapp would have been entitled to judgment against the bank for that amount. However, the Rosebud Bank, in its answer, stated that the appellant was claiming the $2,000 by virtue of a certificate of deposit issued for the same; which certificate was No. 511, dated July 8, 1920, and reciting that said amount was due and payable three months after date, and that said instrument was nonnegotiable, and that the bank was indebted to whoever might be entitled to the $2,000, and was ready to pay the same when that issue was determined. It prayed that the appellant be made a party, and that the right to said $2,000 might be adjudicated, to the end that the garnishee should be fully protected by the judgment of the court.

"The appellant filed an answer, in which it alleged that it was the owner of the certificate referred to; that it had purchased a like certificate for $4,100, issued to the refining company, paying therefor a valuable consideration, without notice other than was indicated by the certificate itself, and that subsequently $2,100 was paid on the certificate last mentioned, and a new certificate for the balance of $2,000 was issued, of which it was the owner; and prayed judgment against the Rosebud Bank for that amount.

"Appellee answered the petition of the Houston bank, alleging that the $2,000 was held in trust by the Rosebud bank, by reason of the agreement referred to in the findings of fact and his contract with the refining company.

"Thus it will be seen that, while the suit against the Rosebud bank was originally that as garnishee, under the pleadings upon which the parties went to trial, the suit became one in equity to determine the rights of Sapp and the Houston bank to the $2,000 referred to. The statement contained in the certificate of deposit that the same was nonnegotiable rendered it subject to all defenses against the Houston bank that were available against the refining company. Subject to such defenses, the Houston bank became the owner of the certificate of deposit."

The Court of Civil Appeals, in an opinion by Justice Jenkins, concurred in by Justice Brady, affirmed the judgment of the district court after slightly adjusting the costs in the trial court. Chief Justice Key filed a dissenting opinion. Pending action on the motion for rehearing Justice Brady was suc- ceeded on the court by Justice Blair. The latter, on motion for rehearing, agreeing with Chief Justice Key, granted the motion, and reversed the judgment of the district court, and rendered judgment for the Houston bank. To this last majority opinion of the court Justice Jenkins filed a dissenting opinion. The various opinions above mentioned can be found in 252 S. W., beginning on page 299.

Upon a careful consideration of the case we have concluded that the first majority opinion of the Court of Civil Appeals was correct and properly disposed of the case. Justice Jenkins, in the first majority opinion, sets out the correct rules governing the case, and we doubt if we can add anything of value to what was there said by him. Furthermore, in his dissenting opinion, filed later, he seems to us to completely answer the contrary opinions filed in his court. Therefore we shall but briefly refer to a few of the points in controversy.

In the first place, we do not understand that the last majority opinion of the Court of Civil Appeals overrules any of the findings of fact in the original opinion of that court. Judge Blair seems to approve the findings of fact by the trial court, and, speaking of the additional findings of fact by his own court in its first opinion, says that some were the result of evidence improperly admitted and others were immaterial. Nowhere does he say that the additional facts are not justified, and in fact compelled, by the statement of facts on file in this case. After carefully reading the statement of facts, we conclude that the facts as stated by Judge Jenkins, in his opinions, are amply justified by the record; that no other findings could reasonably have been made. The evidence, considered as a whole, could lead reasonable minds to no other conclusion in our judgment.

[1] In fact, this case is one upon practically undisputed facts. The Columbian Refining Company, through its stock selling agent, appears upon the scene in the little city of Rosebud. The agent desires to sell stock in that company. He tells the local inhabitants that Rosebud needs a first class filling station; that his company will erect it if they will show an interest by buying stock in this company; that all of the money they pay in for stock will stay in Rosebud and be used in part payment of the cost of the new filling station. With commendable and rather unusual precaution and business foresight these good people of Rosebud saw to it that the $4,100 paid by them for stock in this company was kept in a local bank in trust for the construction of the filling station. There was an express agreement between the stockholders, the holding bank at Rosebud, and the Columbian Refining Company that the $4,100 should remain

in the bank at Rosebud until the filling station was erected, and that said amount should be used in paying for such station. Under these facts the fund was impressed with an express trust, and it was not within the power of the refining company to change the terms of that trust without the consent of the stockholders.

Under the terms of this express trust the refining company could not divert these funds to any other purpose. Nor could its assignee do so, unless an innocent purchaser of the deposit for value. Was the Houston bank an innocent purchaser? We think not. The first certificate issued by the Rosebud bank was for $4,100, payable to the refining company, and expressly provided that it was not subject to check and was nonnegotiable. Our statutes provide as follows with reference to an instrument of that kind:

"Art. 583. The obligee, or assignee, of any written instrument not negotiable by the law merchant may transfer to another, by assignment, all the interest he may have in the same.

"Art. 584. The assignee of any instrument mentioned in the preceding article may maintain an action thereon in his own name, but he shall allow every discount and defense against the same which it would have been subject to in the hands of any previous owner before notice of the assignment was given to the defendant; and in order to hold the assignor as surety for the payment of the instrument, the assignee shall use due diligence to collect the same." Rev. St. 1911.

As Chief Justice Key says, our Supreme Court has construed these articles, in conformity with their plain language, to mean that, after notice of the assignment has come to the defendant, the maker or holder of the note, no further defenses can then arise against the assignee. No further defenses did arise here. The nature of this trust was the same from its very beginning to this very day. Every day since the deposit was made the money could be used only for material and labor employed in erecting the filling station. No new facts or defenses arose at any time. The name of the contractor was not material to the Houston bank. The only thing of importance to that bank was the knowledge that the money was to be paid out for the construction of the station. So far as that bank was concerned, it made no difference whether it was paid out to A., B., or C.

When the second certificate for $2,000 was issued the refining company, it also provided that it was not subject to check and was nonnegotiable. The Houston bank was put upon inquiry to ascertain what defenses could be urged against this certificate. Any inquiry of the bank which issued it, or which agreed to pay it, would have divulged the nature of the fund. As a matter of fact, the Houston bank did actually know all about this fund before it accepted the second certificate, the one now in suit.

It is true, of course, that Sapp was not in the minds of the parties to this agreement as a beneficiary, at the time the agreement was first made. It was not known, at the time of the creation of the trust, that this very man would do the work necessary in the construction of the station. All that was known was that some one would build it, and that whoever did the work would be paid from this fund. Therefore the question arises as to whether or not one, not known to the subscribers at the time, was in privity with them, and could be a beneficiary herein. Upon this point Justice Jenkins held:

"It is contended that the appellee Sapp, not being a subscriber to the fund, was not in privity with the subscribers, and had no right to demand that the money be used in payment for the erection of the station. The agreement between the contributors to the fund, citizens of Rosebud, and the refining company, was for the benefit of the contractor for the erection of the filling station, whosoever he might be and when ascertained. When Sapp entered into his contract for the erection of the station, with the agreement between him, the refining company, and the bank that he should be paid this $2,000 on deposit for erecting the station, he became the party contemplated by the original agreement, and was in privity with them, to the extent that he had the right to demand that the bank should comply with its duty as trustee, and pay this money to him. Of course, if the refining company had paid Sapp out of any other funds, his acceptance of the same would have put an end to his right to demand the $2,000, and any pro rata payment to him would, to that extent, have had the same effect, for he could not have demanded that he be paid twice for the same work."

[2] We think Judge Jenkins has correctly decided this point. We find no authorities to the contrary. Many cases, at least by analogy, sustain our view!

It clearly was not necessary that Sapp know of the creation of the trust at the time of its creation nor assent to it. In the case of Wallis v. Beauchamp, 15 Tex. 306, Chief Justice Hemphill says:

"It may be, the trust was unknown to the creditor, in this case, at the time of its creation, yet that would not deprive him of the right to its benefits. Where a trust is created for the benefit of a third person, although without his knowledge, he may afterwards affirm it and enforce the execution of it in his favor, at least if not in the intermediate time revoked by the person who created the trust."

Again, along this same line, in the case of Montgomery v. Culton, 18 Tex. 747, our Supreme Court said:

"It appears, then, that the defendant not only procured the removal of the executor, his office in fact ceasing at the pleasure of the said Anne E., under the will; that they not only took entire possession and control of the whole property, with all its fruits and profits, but express-

ly stipulated, in effect, that they would pay the just demands against the estate; for this is the substantial effect of their agreement to hold the executor and the specific legatees harmless against such claims. Can it be doubted that they hold the property charged with the liabilities to which it had been subject in the hands of the executor? The effect of an ordinary transfer of property from one person to another, with an agreement on the part of the one who receives that he will pay the just demands against the one who makes the transfer, is to raise a trust for the creditors of the assignor, though the transfer was made without their knowledge; and they may maintain their actions against the assignee. Walns v. Beauchamp, 15 Tex. R. 305, and cases cited. There is no difference in principle between the transfer, in the case supposed, and the one in the case under review. The obligation on the part of the heirs, who have taken the property out of the hands of the executor, who have elected to consider the administration as closed, would in itself be sufficient to authorize creditors of the estate to enforce their claims by suit; but when to this is added their voluntary obligation to pay these demands, or in other words, to save the executor harmless, a case is presented of obligation on the part of the heirs, as strong as could be raised against the holder of property charged with a trust in favor of third persons."

In a kindred sort of case, Chief Justice Stayton, in Milling Co. v. Eaton, 86 Tex. 408, 25 S. W. 617, 24 L. R. A. 369, says:

"A gift or voluntary conveyance of property in trust, where fully completed and executed, is valid, and will be enforced against all persons, except creditors or bona fide purchasers, even though the beneficiary may not have been in existence at the time, or, if in existence, may not have known of or assented to the conveyance.

"Such has been recognized to have been the law in England for more than two centuries. Thompson v. Leade, 2 Ventris, 198; Siggers v. Evans, 5 El. & B., 380; Newton v. Askew, 11 Beavan, 150; Standing v. Bowring, 31 Ch. Div. 282; Paterson v. Murphy, 11 Hare, 88; Ellison v. Ellison, 6 Vesey, 656; Kickenich v. Manning, 1 De G., Macnachten & Gordon, 175.

"The same rule, as to such trusts, is sustained by the American courts; and even by those which hold assent of creditors necessary to validity of assignments made for their benefit, and refuse to presume it. Viney v. Abbott, 109 Mass. 300; Sewall v. Roberts, 115 Mass. 272; Stone v. Hackett, 12 Gray, 230; Sargent v. Baldwin, 60 Vt. 17; Martin v. Funk, 75 N. Y. 134; Garner v. Life Ins. Co., 110 N. Y. 266; Light v. Scott, 88 Ill. 239; Gulick v. Gulick, 39 N. J. Eq. 401."

In the interesting case of Hewett, v. Hurley, 88 Me. 431, 34 A. 274, the Supreme Court of Maine speaks as follows:

"Samuel Pillsbury died February 6, 1890. On January 28th previous he signed a check, payable to his daughter, Frances E. Hurley, of the following tenor: 'Rockland, Me., Jan. 28, 1890. Pay to the order of F. E. Hurley, trustee, one thousand dollars for a monumental fund. To act without bonds.'

"The check was afterwards paid to the trustee. The administrator of Pillsbury brings assumpsit against the payee of the check for money had and received. A nonsuit was ordered below, and the case comes up on exceptions.

"The check created a trust in the daughter for a specific purpose, and she may, in equity, be compelled to administer the same; but the fund cannot be recovered from her in an action at law by the administrator and the trust destroyed. As to the creation of trusts, see Savings Inst. v. Hathorn, 88 Me. 122, 33 Atl. 836."

In this Maine case the father did not provide that this money should finally be paid to any particular person. He only made the assignment for a certain purpose. The court held that he had a right to do this, and that the administrator of the estate could not take this money away from the daughter. On the other hand, the court held that a court of equity could require the daughter to administer this trust in the furtherance of the specific purpose provided for therein. So, in the case at bar, these stockholders and others to the agreement could consent among themselves that this money should be held for the purpose of erecting a filling station, even though at that time no specific contractor was in the minds of the parties.

[3] It will be seen from the Texas cases above quoted that property can be conveyed in trust for the paying of debts. If that is true, we see no valid reason why it cannot be conveyed in trust for the payment of a debt which all the parties agree shall be incurred. The name of the contractor in the instant case was unimportant. The vital point involved is that it was agreed that some one should be employed to build the station. Of course, a debt was to be created in favor of whoever might be employed to do the work. Under the arrangement entered into the refining company was to let the contract and the Rosebud bank to pay out the money in furtherance of the purposes of the trust. We are unable to conceive any reason why the courts of our country should set aside a contract of this kind voluntarily assumed by the parties. In fact, we are unable to discover any objection to the contract. It would frequently be true that it would be better to leave to the future the selection of the contractor to do the work the parties agree shall be done. The various stockholders at Rosebud agreed that their money should be deposited in the local bank and paid out by said bank as their agent for the construction of the station. They agreed that the refining company might let the contract for the station. They retained no right of management of the money or contract. They were willing for the refining company to have the work done, and they authorized the bank at Rosebud to pay out the money on deposit when it thought the purposes of the trust had been fulfilled. There was no reason in the world for making the stockholders parties to this suit. The

refining company made this contract with Sapp. It told him that this very deposit was in the bank and would be for his benefit. The Rosebud bank, through its officer, was present and assented to it. The station was completed. Sapp did his work according to the contract. This is indisputable. He was entitled to $2,000. He certainly was entitled to this very $2,000 on deposit, unless the Houston bank had a superior claim. All necessary parties were before the court. The only ones between whom there was any possible contest were there. The stockholders were in no sense adversely interested to the Rosebud bank or Sapp.

Counsel for plaintiffs in error, in their petition for writ of error, say:

"The case of the City of Dallas v. Loonie, 83 Tex. 291, 18 S. W. 726, is, we think, authority for the following two propositions: First, that the refining company is and was estopped to say that the fund in the Rosebud bank was validly assigned to the Houston bank; and, if so, such bank would be likewise estopped; second, that the transaction in evidence in this case constituted an assignment of the fund either to Sapp, or, if it should be said that he was not then known, then it constituted an assignment of the fund to a purpose, the building of the filling station, and that the right 'to the fund became vested in Sapp when he did the work."

We agree with counsel in their aforesaid statement. Furthermore, we think that case tends very strongly, to say the least of it, to support our view that the stockholders were not necessary parties. In the Loonie Case, supra, Byrne & Co., one of the principal parties, had signed the contract in suit by Owen J. Cook. He was not before the court. Continuance was sought in order that service might be had upon Cook. The continuance was refused by the trial court, and that action sustained by our Supreme Court. The court said:

"We are of the opinion that the proceedings under the agreement for arbitration, taken in connection with the proper construction of the agreement itself, amounted to an assignment by Byrne & Co. to Loonie of the funds in the hands of the city due on the contract for the building, not to exceed the amount of the award. Although Cook had bought out the interest of his copartners in the contract he is estopped by the award, because the agreement was executed by him, and the submission to the arbitrators was made by Byrne & Co. acting through him. He had assigned to the appellee Loonie whatever right he had to the fund, and was not a necessary party to the suit to recover the same, especially since there was no controversy made either in the pleadings or the evidence about the validity of the award or the construction of the agreement by which Loonie claimed that the city held the fund for him."

In the case at bar the stockholders had turned over their money to others to manage and to pay to the parties constructing the station; therefore they had assigned to others the management and control of these matters with reference to their property.

[4] As pleaded by the Rosebud bank, this fund belonged to the refining company, and was subject to Sapp's judgment against that company, unless the Houston bank had a better claim to it than Sapp. The latter bank certainly had no right to recover the money. Nor did it ask that any of the stockholders be made parties to this suit. We think counsel for Sapp correctly view this case, in another connection, when they speak as follows:

"Since all of the testimony shows, without contradiction, that the money was paid to the refining company under an agreement that it should remain in Rosebud and should be expended for the filling station, and since it was deposited in the Rosebud bank under this agreement, and since the Houston bank, in acquiring the particular certificate of deposit, occupies the place of the refining company, it could not recover in this case in any event. If it was not entitled to the money, it would not matter if Sapp recovered it.

"As between the subscribers and the refining company this was an express trust. Perry on Trusts (3d Ed.) § 73. The refining company and the subscribers expressly agreed that the money should be kept in Rosebud, and should be used to pay for the filling station.

"It was also an express trust as between the refining company and the Rosebud bank, because the refining company deposited the money under this agreement, and the bank agreed to hold it for that purpose.

"As between the refining company and the builder of the station when he became known, it was an implied trust at least, if not an express one. 'Implied trusts are those that arise when the trusts are not directly or expressly declared in terms; but the courts, from the whole transaction and the words used, imply or infer that it was the intention of the parties to create the trust.' Perry on Trusts, § 112."

After all, this seems to us to be a simple case. A deposit was made for a certain purpose. The refining company could not use the money for any other purpose. The Houston bank could not do so. By reason of the nature of the certificate of deposit, it certainly could have no higher rights than the refining company. This is true, for the reason, as heretofore stated, that there was no material change made in the status of this deposit at any time after it was first made. The selection of Sapp as a contractor was merely an incident in carrying out the original agreement which was made before the Houston bank ever acquired any rights. It was charged with knowledge of these facts when it bought a nonnegotiable certificate. There never was a moment when the Houston bank was not charged with the notice of the trust character of the deposit. When it first demanded payment of the $4,100, the amount of the certificate, it was told plainly by the Rosebud bank that the amount would

not be paid. They were also told why it would not be paid. Finally, $2,100 of it was paid because the refining company furnished that much material for the station. Payment for material of that kind was in line with the purposes of the trust. The Houston bank knew, therefore, that it could not collect this money except for material and labor going into this station. When it accepted the certificate in suit, it had actual knowledge that the money was impressed with a trust in favor of whoever might build the station. Therefore it cannot recover this money and set aside the trust. The Rosebud bank has been faithful to its trust and held this money to be applied strictly in accordance therewith. The facts show that it was well for the stockholders that they were so careful. Otherwise, the record in this case makes it quite clear that Rosebud would not have enjoyed the privilege of having this filling station in its boundaries.

We think Justice Jenkins, in his original opinion, held correctly that the Houston bank was always charged with notice of the trust character of the deposit, and that in addition thereto that bank must be held, in accepting the certificate in suit, to have agreed to the prior rights of whoever might build the station. This for the reason that it had actual knowledge of the facts when it accepted the certificate.

In writing the final majority opinion of the Court of Civil Appeals Judge Blair says: "We do not find any case exactly in point with the case at bar." We have been unable to find any which are exactly in point. But we do not agree that the case presents perplexing questions. In fact, it rather occurs to us as being so clear that the courts have not been frequently, if ever, called upon to announce the law in connection therewith.

The first majority opinion of the court of Civil Appeals affirmed the judgment of the district court after reforming it slightly as to costs which accrued in the latter court. We think that judgment was correct. At least, there was never any complaint of the disposition of the case as to costs. The Court of Civil Appeals, in that opinion, assessed certain trial court costs against plaintiffs in error, and, for that reason, assessed the costs in the Court of Civil Appeals against them also.

Therefore we recommend that the final judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed, with the exception that $39 of the costs in the latter court be assessed against plaintiffs in error. We further recommend that the costs in the Court of Civil Appeals be assessed against plaintiffs in error, and those in the Supreme Court against defendant in error.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, with reformation as to costs as recommended by the Commission of Appeals.