## COMMISSIONER OF INTERNAL REVENUE v. GUITAR TRUST ESTATE et al.

## GUITAR TRUST ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7293.

Circuit Court of Appeals, Fifth Circuit.

Aug. 24, 1934.

S. E. Blackham and Sewall Key, Sp. Assts. to Atty. Gen., Frank J. Wideman, Asst. Atty. Gen., and Frederick R. Shearer, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for petitioner.

J. S. Y. Ivins, of Washington, D. C., and R. C. Winters, of Abilene, Tex., for respondent.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

John Guitar, Sr., as fiduciary for the Guitar Trust Estate, filed fiduciary returns of income taxes for the taxable years 1922 to 1926, inclusive, taking deductions for the distributive portion of the net income for those years allocated to the beneficiaries, and reporting no taxes due by the trustees. The Commissioner held the trust to be an association, taxable as a corporation, determined deficiencies, amounting to $65,791.43, and assessed penalties of $16,447.86. The Board of Tax Appeals held that the estate was not an association; that returns had been properly filed within the delays allowed by the Commissioner and penalties were not assessable; that for the years 1923 to 1926, inclusive, the trust owed no tax, but for the year 1922 there was a deficiency of $19,194.28 instead of $9,742.69 as determined by the Commissioner. The original opinion of the Board, reported in 25 B. T. A. 1213, states that a deficiency existed also for 1923, because of a clerical error in dating a supplement to the trust deed. This was corrected by an unpublished memorandum opinion after reopening the case. Both the Commissioner and the taxpayer have petitioned for a review of the decision of the Board.

The material facts not in dispute are these: On December 30, 1921, John Guitar, Sr., and his wife, Laura O. Guitar, citizens of Texas, executed and recorded a voluntary deed by which all their property, except a small part valued at about $19,000, was transferred to John Guitar, Sr., and his two oldest sons, John Guitar, Jr., and Repps Guitar, as trustees, for the benefit of the parents and all their children, of whom there were eight, in equal shares, with a limitation over in case of the death during the trust of any beneficiary named in the deed to his descendants if any, and if none then to the other beneficiaries. The property transferred belonged to the marital community, was valued at $1,079,335.80, and consisted of large tracts of Texas real estate and much personal property. John Guitar, Sr., had been engaged in the cotton business, the cotton seed business, ranching, and other pursuits for many years, and his two eldest sons, named as joint trustees, had assisted him in managing his entire affairs, each in complete charge of a separate

546

branch of the business, while he gave it general supervision. No change was made in the conduct of the business by the creation of the trust. Entries were made on the books of account under date of December 31, 1921, allocating $107,933.58 to each of the ten beneficiaries. These entries were designated as "invested capital." Each year thereafter, early in January, when the books were balanced and closed, one-tenth of the net profits was credited to the "invested capital" account of each beneficiary as of the last day of December. The trust deed was drawn up by John Guitar, Sr., himself, without seeking legal advice. It provided that the trustees should have the exclusive management and control of the estate during the term of the trust; that they might sell and dispose of the whole or any part of the estate or mortgage and encumber the same on such terms as they might see fit; that they should be paid a reasonable compensation for their services as trustees; that in the ordinary management of the business and the affairs of the trust any one of the trustees might act and bind the estate, except in the conveyance of real estate for which it would be necessary for at least two trustees to join; that the remaining trustees should fill any vacancy; that the trust should continue for five years after the death of John Guitar, Sr.; that then the trustees could either terminate or continue it as they should elect; that in any event the trust should terminate within twenty-five years after the death of John Guitar, Sr.; that the beneficiaries should have no voice in the control and management of the estate and no right to mortgage, incumber, or in any way dispose of their beneficial interests until they had received same from the trustees. The trust deed did not contain any provision authorizing its creators to revoke or alter it. The trust deed contained this provision touching a distribution of the income: "The said trustees shall make an accounting with the beneficiaries herein once each year during the term of this trust and the trustees shall, at their option, declare a dividend out of any profits that may have accrued to said estate, which may be paid to each of the beneficiaries herein named, or retained in the business as the trustees may determine."

John Guitar, Sr., and his wife did not consult any of their children in creating the trust nor in executing a supplement, hereafter referred to, but notified them of the execution of both instruments. Certificates of interest in the nature of stock were not provided for in the trust deed and none were

ever issued. Except the trustees, the beneficiaries took no part in the affairs of the trust at all and there was never any meeting of them to discuss the business. Some small withdrawals of funds allocated to the beneficiaries were made from time to time.

It is apparent that John Guitar, Sr., and his wife created a voluntary trust for the benefit of their children by donating to trustees for them eight-tenths of practically all they owned, reserving to each of themselves only a child's share. The beneficiaries as such had no voice in the management of the trust and no power to dispose of their beneficial interests. or to select their trustees. Except that the trustees were authorized to continue the going business, the trust had no feature in common with a corporation. The very purpose of creating a trust is to have the property administered by trustees for the beneficiaries. It is not unusual that this should include the conduct of a going business. The case comes under our decision in Blair v. Wilson Syndicate Trust (C. C. A.) 39 F.(2d) 43. We agree with the Board that the Guitar Trust Estate was not an association.

On January 10, 1923, John Guitar, Sr., and his wife, grantors in the trust deed, executed and in 1924 recorded a supplementary deed which purported to cancel the above-quoted provision about the distribution of the income and to substitute this: "The trustees shall make an accounting with the beneficiaries herein once each year during the term of this trust and each of the ten beneficiaries is to be credited with one-tenth of the annual income of this trust estate or charged with one-tenth of the loss whichever the case may be, this income may be drawn out at any time by the beneficiaries, the beneficial interest however must remain intact until the final termination of the trust and is subject to all the conditions named in the original deed of trust." The Board of Tax Appeals without discussion assumed that this supplementary deed took effect from its date and converted the trust from one in which the income was distributable in the discretion of the trustees. into one in which the income was distributable annually. The original deed reserved no control over the trust in the grantors. After it took effect they had no right or interest save as fixed by the deed. As the former owners of the property and as grantors of the trust, they had no power to alter the terms of the trust nor the duties of the trustees. Sapp v. Houston Nat. Exchange Bank (Tex.

Com. App.) 266 S. W. 141; Hurt v. Gilmer, 59 App. D. C. 282, 40 F.(2d) 794; Anderson v. Kemper, 116 Ky. 339, 76 S. W. 122; Dickerson's Appeal, 115 Pa. 198, 8 A. 64, 2 Am. St. Rep. 547; Vason v. Gilbert, 99 Ga. 220, 25 S. E. 409. The supplementary deed of itself accomplished nothing unless to express a consent on the part of its signers to the annual distribution therein described. That there was any contract or transaction which was effectual as between the trustees and the beneficiaries to alter the trust so as to require an annual distribution of income by the trustees nowhere appears in the record. So far as the present evidence shows, the trust continued to be one in which the income was distributable in the discretion of the trustees.

Under section 219 of the Revenue Acts of 1924 and 1926 (26 USCA § 960 note), when the income of the trust is to be accumulated or distributed in the discretion of the fiduciary, the fiduciary is allowed an additional deduction of such amounts of the net income as are properly paid or credited to the beneficiaries during the taxable year and such income is taxable to the beneficiaries; but net income not paid to the beneficiaries or so credited to them as to be subject to their control and withdrawal is taxable to the fiduciary. The corresponding section (section 219) of the Revenue Act of 1921 (42 Stat. 246) did not expressly deal with trusts by whose terms distribution of income was discretionary with the fiduciary. Under it article 342 of Regulation 62 was promulgated, directing that the income of such a trust be taxed to the fiduciary irrespective of how he exercised his discretion. The Board of Tax Appeals in a well-considered opinion held this Regulation not authorized by the act, and that the net income of such a trust which the fiduciary in fact held and accumulated was taxable to the fiduciary but that which he in fact distributed was taxable to the beneficiary. Appeal of Wm. E. Scripps et al., Trustees, 1 B. T. A. 491. With this conclusion we agree. Congress incorporated it into the acts of 1924 and 1926. The law on this point is thus the same for all the years here involved. It is

not, however, the beliefs of the interested parties which control, but the terms of the trust instrument and the rightful acts of the fiduciary under it. Freuler, Adm'r, v. Helvering, 291 U. S. 35, 54 S. Ct. 308, 78 L. Ed. 634; McCrory, Trustee, v. Commissioner (C. C. A.) 69 F.(2d) 688.

The actual payments made to the beneficiaries during the several years were comparatively small. Each year a tenth of the net income was put to the credit of each beneficiary as "invested capital" along with his share of the original trust property. These entries do not purport on their face to be a crediting for withdrawal equivalent to a distribution, but rather an addition to the original invested capital equivalent to an accumulation of the income. We do not think, however, that the entries are conclusive. The trustees, having power so to do, may have undertaken to carry out the direction of the invalid supplementary deed, and they appear in their tax returns to assert that the income was distributed. The evidence on the point is so meager and unsatisfactory that it is better that the case be reinvestigated as to the true facts attending the distribution of income and the effort to change the duties of the trustees in that regard. Under the present evidence we think the conclusions of the Board are not sustainable as to the years since 1922, and we sustain the petition to review with direction to reopen the whole case for further evidence on the contested matters of fact.

We notice that the assessment by the Commissioner was made against Guitar Trust Estate as an association. It appealed to the Board under that name, denying that it was an association. That contention it has won. If taxes are to be determined against the trustees as fiduciaries, it would seem that they ought more clearly to appear as parties to the proceeding. We do not doubt that they are in fact representing this litigation, but it would be appropriate that they become expressly parties of record.

Petitions for review granted.