## HIGGINSON v. UNITED STATES.

### No. 46076.

**United States Court of Claims.**

**Dec. 6, 1948.**

Sharpe, both of Washington, D. C. on the brief), for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

LITTLETON, Judge.

The first question presented is whether distributions by a corporation in payment of accumulated dividends on its preferred stock in the years 1937 to 1940, inclusive, to the extent that they represented distributions out of appreciation in value of property existing on March 1, 1913, and realized thereafter, were exempt from income tax, as claimed by plaintiff, or were taxable to the extent that they exceeded the basis of the stock, as claimed by defendant.

The facts with reference to the appreciation in value of property owned by the Gauley Coal Land Company on March 1, 1913, which was realized thereafter and distributed during the taxable years in payment in part of accumulated dividends on its preferred stock, are set forth in detail in findings 6 to 23, inclusive.

Plaintiff is a beneficiary under two trusts created by Ida A. Higginson, his interest under the first trust created by indenture being 100 percent and under the second residuary trust created by will, being 75 percent. Throughout the years 1937 to 1940, inclusive, and prior thereto, each trust owned 265 shares of the preferred stock of the Gauley Coal Land Company. Since 1903 the Gauley Company has had outstanding 11,440 shares of 6% cumulative preferred stock and 22,880 shares of common stock both of which had voting rights (finding 9). Under the charter no dividends could be paid on the common stock until all accumulated dividends on preferred stock had been paid. The accumulated and unpaid dividends on preferred stock were $200 a share on January 1, 1930. In 1930 the corporation decided to reduce the par value of its preferred stock and in that year and in 1931 the corporation made certain distributions in partial liquidation of the preferred stock from a par value of $100 a share to a par value of $1 a share (findings 14, 15). These distributions were not payments made as part of an arrange-

Scott P. Crampton, of Washington, D. C. (Geo. E. H. Goodner, of Washington, D. C., on the brief), for plaintiff.

John A. Rees, of Washington, D. C., and Theron Lamar Caudle, Asst. Atty. Gen. (Robert N. Anderson and Andrew D.

ment for the complete retirement of the stock.

The cost basis for federal income tax purposes (gain or loss on sale) for the 265 shares of preferred stock owned by each trust, as set out above, was $17,225 for the trust under the indenture and $5,167.50 for the trust under the will. Nontaxable distributions were made by the Gauley Coal Land Company prior to January 1, 1937, in amounts exceeding such cost basis (finding 6).

After the par value of its preferred stock had been reduced, as above stated, the Gauley Company in 1934 began making payments on account of the accumulated dividends on its preferred stock, payments of $65, $31, and $30 for each share of stock being made during 1934, 1935, and 1936, respectively. As a result of these distributions, all earnings and profits of the corporation accumulated since March 1, 1913, had been distributed at December 31, 1936, and a part of the distributions so made was from sources other than earnings and profits accumulated since March 1, 1913. Similar distributions were made on account of the accumulated dividends on the preferred stock during 1937, 1938, 1939, and 1940, such payments being in the total respective amounts for each year on each share of stock of $19, $5, $8, and $8.

The total earnings which the Gauley Company had in each of the years 1937 to 1940, inclusive, and the total payments made in each of those years on account of the accumulated dividends on the preferred stock, as above-mentioned, were as follows:

| Calendar year | Distributions paid per share | Earnings | Total distributions |
|---|---|---|---|
| 1937 | $19.00 | $72,496.73 | $215,251.00 |
| 1938 | 5.00 | 31,487.75 | 56,558.00 |
| 1939 | 8.00 | 29,355.91 | 90,328.00 |
| 1940 | 8.00 | ............ | 90,178.00 |

The extent to which the distributions made from 1937 to 1940, inclusive, were paid from earnings accumulated since March 1, 1913, and the extent to which paid from appreciation existing on March 1, 1913, but realized since that time through sales of property or otherwise, were as follows:

| Calendar year | Amount paid from earnings | Amount paid from realized appreciation | Total paid |
|---|---|---|---|
| 1937 | $72,496.73 | $142,754.27 | $215,251.00 |
| 1938 | 31,487.75 | 25,070.25 | 56,558.00 |
| 1939 | 29,355.91 | 60,972.09 | 90,328.00 |
| 1940 | ............ | 90,178.00 | 90,178.00 |

Section 115 of the Revenue Act of 1936, 26 U.S.C.A. § 115, so far as here material provides:

"Sec. 115. · Distributions by Corporations

"(a) Definition of Dividend.—The term "dividend" when used in this title (except in section 203(a) (3) and section 207(c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

"(b) Source of Distributions.—For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113."

Section 113 contains provisions with reference to the determination of the cost or value basis of property, including stock, for the purpose of measuring the gain or loss upon the sale or disposition thereof.

Counsel for defendant take the position that dividend distributions of the character here involved are exempt from

tax under subsection (b) above only until the amounts received by the stockholder equal ·the adjusted basis of the stock, as provided in section 113, and that all amounts thereafter received are taxable income. We cannot agree. Since the advent of the income tax in 1916, earnings accumulated prior to March 1, 1913, or increase in value of property existing on that date, have been treated in cases such as this as being in the nature of capital and exempt from tax when distributed. Southern Pacific Co. v. Lowe, 247 U.S. 330, 335, 38 S.Ct. 540, 62 L.Ed. 1142.

The defendant would have us read § 115 (b) as providing that distributions of the character here involved shall be exempt from tax until they equal the adjusted basis of the stock and shall thereafter be taxable as other income. The difficulty with this position of defendant is that the ˚statute expressly provides otherwise, and to interpret it as defendant contends would amount to legislation. The test of the exemption provided for in the statute is not the basis of the stock in the hands of the stockholder. The basis of the exemption from tax is the source of the distribution. The provision that the "tax-free distribution" shall be applied against and reduce the basis of the stock "provided in section 113," relates to a matter entirely different from the taxation of the distributions when received; i. e., gain or loss upon the sale or disposition of the stock. The two provisions in subsection (b) are entirely consistent. The statute exempts the distributions from tax because they are treated as being in the nature of distributions of capital and they are applied against the basis of the stock, until they equal such basis, for the same reason. There is no indication whatever of an intention to impose a tax on the amounts distributed in excess of the basis. We think the obvious intention is to the contrary. The application of the distributions against the cost or other basis of the stock has no effect whatever upon taxability or nontaxability of the distributions when received by the stockholder. This view is supported by the decision of the Tax Court in Ernest E. Blauvelt v. Commissioner, 4 T.C. 10, 18, in which the court said:

"* * * we conclude and hold that *Congress has made no provision for taxing as gain amounts such as are involved herein,* and that the provisions relative to application of distributions against basis contain nothing upon which to bottom such taxation, contrary˚ to the *definite language providing the exemption.*" [Italics supplied.]

Reports of the Committees of Congress relating to the statutory provision in question also support our interpretation of the section.[1]

---

[1] Ways and Means Committee Report No. 179 on the Revenue Bill of 1924, 68th Cong., 1st Sess., p. 11, states: "In subdivision (b) of the existing law it is provided that tax-free distributions out of earnings and profits accumulated prior to March 1, 1913, shall be applied against and reduce the basis of the stock only for the purpose of determining a loss from the subsequent sale of the stock; such a distribution is not applied against the basis of the stock for determining the gain from its sale. The proposed bill in section 201 (b) provides that a distribution out of earnings and profits accumulated prior to March 1, 1913, shall be applied against the basis of the stock for the purposes of determining both gain and loss from its subsequent sale.

"The theory which causes the allowance of the receipt of the dividend free of tax is that this distribution, being out of earnings accumulated prior to March 1, 1913, constitutes a return of capital to the stockholder. If it is treated as a return of capital for purposes of taxation, it should manifestly be considered a return of capital for purposes of determining his capital investment in the stock, and the resulting gain or loss from its subsequent sale."

In the Revenue Bill of 1928, the House of Representatives eliminated the exemption provision of Section 115 (b) at the request of the Treasury Department (Hearings before the Committee on Ways and Means on Revenue Revision, 1934, 73d Cong., 2d Sess., p. 77), and its Report No. 2, 70th Cong., 1st Sess., p. 20, the Committee said: "Under previous revenue acts corporate distributions from surplus accumulated prior to March 1, 1913, were exempt from tax. There appears to be no reason for continuing this exemption indefinitely. Over fourteen years have elapsed since March 1, 1913, and most corporations

Plaintiff is entitled to recover the overpayments, with interest, resulting from the erroneous inclusion in income for the four years in question, of the amounts of the tax-free distributions hereinabove set forth, and judgment will be entered accordingly.

The next question is whether plaintiff is entitled to recover, as an overpayment, the tax exacted by reason of defendant's inclusion in his income for 1940 the amount of $1,059.54 which was, in the discretion of the fiduciary under the residuary trust, withheld and not paid or credited to plaintiff. In this question is also the further question whether plaintiff filed a sufficient and timely claim for refund (findings 25–28).

Under the facts we are of the opinion that the amount of $1,059.54 in question was not taxable income to plaintiff; that his original timely claim for refund of September 25, 1944, was sufficient when analyzed in the light of the facts, and that the clarifying amendment thereof filed April 23, 1945, was proper. Neither claim had been acted upon by the Commissioner of Internal Revenue at the time this suit was instituted. Both claims were thereafter disallowed.

The item of $1,059.54 in question was a part of the total rent of $21,740.29 received for 1940 by the trustees under the Ida A. Higginson Trust, on an apartment building in Boston (finding 25). The expenses chargeable and charged against the rental income, including $4,236.35 depreciation set up by the trustees and deducted in the fiduciary return for 1940, totaled $22,004.18, or $263.89 in excess of the rent received. See tabulation in finding 25. There can be no question about the fact that the items of "repairs" and "other expenses" of the trust totaling $17,767.83 had been incurred and were proper charges, and that no portion of this sum was distributable income to plaintiff. No adjustment was made in either of these items by the Commissioner. The trust therefore had left in the item of rent received, a balance of $3,972.46 out of which the trustees had the right and authority to deduct depreciation on the building before paying or crediting any of the rental income to the plaintiff as a beneficiary of the trust. The trustees charged on their books and in the fiduciary return

have distributed the surplus accumulated by them prior to March 1, 1913. It seems an appropriate time (particularly in view of the resulting simplification) to eliminate this exemption."

However, the exemption provision was restored by the Senate and the Committee on Finance of the Senate, in its Report No. 960, 70th Cong., 1st Sess., p. 12, said: "Under the present law, if a corporation pays a dividend out of earnings or profits accumulated before March 1, 1913, or out of increase in value of property accrued before March 1, 1913, the dividend in either case is not taxable to the shareholder, but the amount of the dividend reduces the basis of the stock in his hands. Under the House bill the dividend would be subject to the surtax as in the case of any other dividend, and the basis of the stock is not reduced. The provisions of the present law have been in force, except for certain amendments, since the 1916 act, and your committee believes that they should continue in force. Consequently, they had been restored without change." See, also, Senate Finance Committee Report No. 665, 72d Cong., 1st Sess., pp. 30, 31, on the Revenue Bill of 1932, and Report No. 558, 73d Cong., 2d Sess., p. 36, on the Revenue Bill of 1934.

The Committee on Ways and Means, in its Report No. 708, 72d Cong., 1st Sess., pp. 21, 22, on the Revenue Bill of 1932, stated, with reference to Section 113 (b) (1), Adjusted Basis, in part, as follows: "The 1928 act required the basis of stock to be reduced by distributions which, under the law when made, were applicable against basis. The new bill in subparagraph (D), requires, in addition, that basis be reduced by distributions which were free of tax when made. The Board of Tax Appeals has held that distributions out of profits accumulated before March 1, 1913, were not technically a return of capital, because made out of profits rather than capital, and could not be applied against basis in the absence of a specific statutory requirement. Some of the earlier revenue acts, while exempting such distributions from tax, did not in terms require them to be applied against basis, and distributions made during the effective periods of these acts would not, under the language of the 1928 provisions, be applicable against basis. The reason for exempting distributions of this character was that they were regarded as closely akin to a return of capital, whether or not technically such, and the same reasoning requires that they be applied in reduction of basis."

for 1940 the amount of $4,236.35 for depreciation of the apartment building, or $263.89 in excess of the balance of the rent received, thereby showing a loss of that amount. As hereinafter shown no part of the balance of $3,972.46 in the rent account before depreciation, as abovementioned, was distributable to plaintiff; no portion of that sum was paid or credited to him, and he had no right under the terms of the trust to demand payment. Plaintiff did not return any portion of the $3,972.46 as income.

█ The defendant audited the fiduciary return after an investigation and audit of the books and records of the trust, and reduced the depreciation claimed in the return from $4,236.35 to $2,823.62. This had the effect of showing a balance in the rent account of $1,148.84, three-fourths of which, or $1,059.54 was charged by defendant to plaintiff, a beneficiary, and treated as income to him subject to tax.

If nothing further had occurred during 1940 with reference to the rent received by the trust, the action of the defendant in treating the amount mentioned as income to plaintiff would have been proper. However, the will, under which the trust was created, authorized the trustees in their sole discretion to retain a portion of the rental income of $21,740.29 received from the investment in the apartment building, to diminish the cost or book value of the principal, and further authorized them to determine all questions as between principal and income in regard to both receipts and expenditures, and made their decisions as to these matters final (finding 24). Under this authority the trustees, in the exercise of their discretion, determined in good faith (finding 27) that the sum of $4,066.67 of the total rent received should be held to amortize the cost of certain alterations to the apartment building, and transferred that amount from the rental income to the principal of the trust. This, even on the basis of the defendant's decision as to the depreciation item, left no amount distributable to plaintiff under the will and Section 162(b), Internal Revenue Code, 26 U.S.C.A. § 162(b), or properly to be paid or credited to him under 162(c). It is clear,

therefore, that plaintiff is entitled to recover the deficiency and interest assessed and collected on the item of $1,059.54, if he filed a timely and sufficient claim for refund.

██ It is our opinion that such a claim was filed September 25, 1944, which was clarified by a proper amendment filed April 23, 1945. The original claim, made after the deficiency had been determined and collected, stated that "The trustees * * * transferred from income to capital for depreciation on a rented building more than the amount claimed in their * * * return, the difference being incorrectly charged to the beneficiaries." The facts upon which this claim was based were those already before the Commissioner as disclosed by his investigation and audit of the books, records and return of the trust. The Commissioner was not misled by the rather awkward manner in which the ground of the claim was set forth. Read literally the language of the claim was not entirely clear, and a casual reading of the claim might indicate that plaintiff was making some claim with reference to depreciation. However, when the claim is read in the light of the subject matter to which it related and the facts before the Commissioner and upon which it was based, the substance of the ground stated in the claim is clear enough. The statement that the trustees had "transferred from income to capital for depreciation more than the amount claimed in their return" obviously had reference to the $4,066.67, transferred from income to principal in addition to the claim of the trustees for $4,236.35 depreciation in the return. The use by plaintiff of the word "depreciation" instead of "amortization" was not fatal to the claim in the circumstances. In this instance both words mean substantially the same thing. The claim was made after the deficiency had been assessed and collected and the phrase, "the difference being incorrectly charged to the beneficiaries," appearing at the end of the claim, obviously had reference to the difference of $1,059.54 between the amount of depreciation claimed and the amount of $2,823.62 allowed, which difference plaintiff was asserting could not be taxed as income to him. No other reason-

able interpretation can be given to the claim. The sufficiency of a claim for refund is to be judged by the substance as related to the facts rather than the form in which it is stated.

The amendment filed April 23, 1945, did not state a new or different ground, but simply clarified the ambiguous language of the original claim. The amendment, which was filed before the Commissioner had taken any action on the original claim, was, therefore, timely and proper.

Plaintiff is entitled to recover the overpayment of tax and interest on this item of his claim, together with interest on the total, as provided by law.

Judgment will be entered in favor of plaintiff for the total amount due with interest, in accordance with the findings of fact and the foregoing opinion, upon the filing by the parties of a computation or stipulation showing the exact amounts of the several overpayments, the dates of payment, and the amounts on which and the dates from which interest at 6% per annum is to be included in the judgment. It is so ordered.