**Edward L. and Elise W. HAY (a/k/a Elise Waggoner Hay)**

v.

**UNITED STATES of America.**

**Civ. A. No. 4–401.**

United States District Court
N. D. Texas,
Fort Worth Division.
Jan. 4, 1967.

Arch B. Gilbert, Brooks, Tarlton, Wilson & Gilbert, Fort Worth, Tex., for plaintiffs.

Mitchell Rogovin, Asst. Atty. Gen., Washington, D. C., Robert L. Waters, Atty., Tax Div., Dept. of Justice, Melvin M. Diggs, U. S. Atty., Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION

SUTTLE, District Judge.

Edward L. and Elise W. Hay brought this action to recover an alleged overpayment of income taxes plus the interest thereon for the calendar year 1962. The court has jurisdiction of the parties and the subject matter. 28 U.S.C.A., Section 1346.

There are two issues involved, each of which deals with a problem of allocation. The first is whether income earned by a discretionary trust during its fiscal year ended November 30, 1962, which is distributed to the plaintiff beneficiaries on December 1, 1962, and February 1, 1963, should be reported on the beneficiaries' tax return as income for their calendar year 1962, or as income for their calendar year 1963.

The second issue is whether the trustees of a discretionary trust who retain as an increment to trust corpus 27½% of the annual oil and gas income are entitled to deduct an amount of the depletion allowable for tax purposes identical to the 27½% of the trust income so set aside; or, are the beneficiaries entitled to have the depletion allowance apportioned to them on the basis of the trust income distributed to them?

The plaintiffs contend that the two payments involved, paid to them by the

trust in separate checks dated December 1, 1962, and February 1, 1963, were improperly reported on their 1962 income tax return as income received for that year, and should have been reported, in accordance with Section 662(c) of the Internal Revenue Code of 1954 [26 U.S.C.A. § 662(c)], as income received during the 1963 calendar year. The government contends that the payments were distributions of income earned by the trust during its fiscal year ending November 30, 1962, and were properly reported on the plaintiffs' 1962 return as required by Sections 661(a) (2) and 662 of the Internal Revenue Code of 1954. 26 U.S.C.A. §§ 661(a) (2), 662.

The plaintiffs further contend that the depletion deduction of $300,499.73 allowed by Section 611 of the 1954 Code for the oil and gas income realized by the trust during its 1962 fiscal year, was improperly allocated $293,996.04 to the trustees and $6,503.69 to the beneficiaries, and that the depletion deduction should have been allocated among the trustees and the beneficiaries on the basis of the trust income allocable to each of the beneficiaries. The plaintiffs rely on Section 611(b) (3) of the Internal Revenue Code of 1954. 26 U.S.C.A. § 611(b) (3). The government contends that the allocation as made was proper and in accordance with the provisions of Section 1.611–1(c) (4) of the Federal Tax Regulations. 26 C.F.R. § 1.611–1(c) (4).

The Court holds that the trust income payments distributed to the plaintiffs on December 1, 1962, and February 1, 1963, are income properly reported by them for their 1963 tax year, and that they are entitled to a refund of taxes paid on those amounts for the 1962 tax year.

The court further holds that the trustees are entitled to deduct an amount of the depletion allowed for tax purposes that is identical to the 27½% of the trust's income set aside as an increment to corpus.

The issues will be treated separately.

## I. THE PAYMENTS ISSUE

Guy L. Waggoner died testate on December 11, 1950. His will was admitted to probate in Wilbarger County, Texas, and the executors were duly qualified. At the time of Guy L. Waggoner's death, the primary asset of the estate was a one-third stock interest in the W. T. Waggoner Estate, a business trust. During the period of probate, the Guy L. Waggoner Estate turned in to the W. T. Waggoner Estate its one-third of the stock in the W. T. Waggoner Estate, receiving in return assets in kind. Since that time, the Guy L. Waggoner Estate has been engaged generally in the business of ranching and producing oil and gas.

The Guy L. Waggoner Estate was closed November 30, 1957, and the property was distributed to the trustees to be held in trust under the terms and conditions of the will. W. T. Waggoner, Jr., the son of Guy L. Waggoner, was the life-income beneficiary of said trust, and the children of W. T. Waggoner, Jr. were second-tier trust income beneficiaries for life upon the death of W. T. Waggoner, Jr. The trustees were granted complete discretion in distributing the trust income to the beneficiaries during their lives.

W. T. Waggoner, Jr. died in April, 1962. He was survived by three daughters, Jacquelin Waggoner, Jean Waggoner Coberly and Elise Waggoner Hay, the plaintiff in this lawsuit joined pro forma by her husband. On May 4, 1962, a meeting was held in Phoenix, Arizona, between the trustees and the children of W. T. Waggoner, Jr. At the meeting Mrs. Coberly and Mrs. Hay requested that they be distributed their entire share of the trust's income annually and that periodic payments be commenced as soon as practicable. The trustees represented to Mrs. Coberly and Mrs. Hay that such distributions would be made in the absence of some unforeseen change in circumstances. It was also agreed that monthly distributions of $10,000 to each beneficiary would be a conservative amount, and that a final year-end dis-

tribution to each beneficiary of her share of the income found to be remaining would be made as soon as the annual audit of the Estates' business records was completed.

Within a few days after the meeting of May 4, 1962, Mrs. Coberly and Mrs. Hay were each distributed $5,000 by the Guy L. Waggoner Estate trust as a ratable share of the $10,000 monthly distribution for the last two weeks of April, 1962. For the remainder of the trust's fiscal year ended November 30, 1962, monthly distributions of $10,000 were made to Mrs. Coberly and Mrs. Hay. Each of the above distributions to Mrs. Hay is set out as follows:

| Trust Voucher Date | For Month of | Deposited by Taxpayers | Amount |
|---|---|---|---|
| 5/7/62 | April | 5/10/62 | $ 5,000 |
| 6/1/62 | May | 6/6/62 | 10,000 |
| 7/2/62 | June | 7/6/62 | 10,000 |
| 8/1/62 | July | 8/4/62 | 10,000 |
| 9/1/62 | August | 9/6/62 | 10,000 |
| 10/1/62 | September | 10/5/62 | 10,000 |
| 11/1/62 | October | 11/3/62 | 10,000 |
| | | | $65,000 |

The above distributions were deducted in 1962 by the Estate as 1962 distributions, and the plaintiff reported them as income on her 1962 return. No issue is presented on those matters.

The monthly distribution to Mrs. Hay for November, 1962, was made by check drawn on the Guy L. Waggoner Estate dated December 1, 1962, and said check was neither received nor negotiated by Mrs. Hay prior to November 30, 1962.

During the month of November, 1962, Mrs. Hay was informed by Mr. Thomas, the manager of the Guy L. Waggoner Estate, that the final year-end distribution of Mrs. Hay's share of the net income for the trust's fiscal year ending November 30, 1962, would be approximately $50,000.

The Guy L. Waggoner Estate during its fiscal year ending November 30, 1962, carried on a substantial ranching operation in New Mexico, and it had substantial oil and gas interests in and around Vernon, Texas, all of which had been acquired by it in liquidation of its one-third stock interest in the W. T. Waggoner Estate.

In the ordinary course of business, the necessary information from the ranching operation in New Mexico is not received by the general offices in Phoenix, Arizona, for the purpose of closing the books at the end of the fiscal year until about December 10. Similarly, the last portion of the information from the oil and gas operations in and around Vernon, Texas, are not received by the administrative offices of the Guy L. Waggoner Estate in Phoenix, until about January 3, of the following year. Though the Guy L. Waggoner Estate maintains its own accounting staff which takes care of most of the work in closing the books at the end of each accounting period, a formal audit is made by an outside accounting firm at the end of each fiscal year. The necessary computations and schedules for closing the books had been made by the accounting staff of the Guy L. Waggoner Estate for its fiscal year ended November 30, 1962, on or about January 13, 1963.

When the outside accounting firm, which performed the annual audit for the fiscal year ended November 30, 1962, came to the offices of the Guy L. Wag-

goner Estate for the purpose of making the final audit, they were informed that the estate desired the final net income figures as promptly as possible. These figures were delivered to the manager of the Guy L. Waggoner Estate on January 31, 1963, and he immediately presented them to the corporate trustee, the Valley National Bank. Appropriate authorization was made by the corporate trustee, and checks were issued by the Guy L. Waggoner Estate the next day, February 1, 1963. Mrs. Hay's check in the amount of $56,478.25 was delivered to her in due course.

The books and records maintained by the Guy L. Waggoner Estate treat the amounts of $10,000.00, represented by the check dated December 1, 1962, and $56,478.25, represented by the check dated February 1, 1963, as distributions of income earned by the trust during its fiscal year ended November 30, 1962. All entries with respect to the $56,478.25 amount were made in the books at or about February 3, 1963, and were dated as of the end of the fiscal year November 30, 1962.

By letter dated March 20, 1963, from the manager of the Guy L. Waggoner Estate to plaintiff's accountant, plaintiffs were advised that Mrs. Hay was taxable in 1962 for the distribution of $10,000.00 by check dated December 1, 1962, and the distribution of $56,478.25 by check dated February 1, 1963, for the reason that said checks had been distributed to her within 65 days after the close of the trust's 1962 tax year. The plaintiffs thereafter included the two deductions on their income tax return for the calendar year 1962 as income received during 1962, and timely paid the tax thereon.

By letter dated October 13, 1963, from Valley National Bank, co-trustee of the Guy L. Waggoner Estate, to plaintiffs'

attorneys, plaintiffs were advised that the "65-day rule" of Section 663 did not apply to the trust or to the distributions which had been made to Elise W. Hay. Edward and Elise Hay reported the distributions of $10,000.0C and $56,478.25 on their 1963 joint income tax return, and paid the tax thereon. They timely filed a claim for a refund of taxes paid for their calendar year 1962. In said claim, they contended that they were taxable only upon the sum of $65,000.00, which was the amount actually paid to or credited to Elise W. Hay by the trust during its fiscal year ended November 30, 1962. As a part of said contention, they asserted that the distributions of $10,000.00 and $56,478.25, discussed above, were distributions properly reported on their 1963 joint income tax return. The government contends that the 1962 income tax return treated the December and January distributions properly, and that there was no overpayment of taxes.

In order to determine the tax consequences of the trustee and beneficiaries of a testamentary trust with regard to a trust's income, it is first necessary to identify the type of trust which is involved. Such determination is governed by the intent of the testator as it is expressed in the terms of the trust instrument. Frank's Trust of 1931 v. Commissioner, 165 F.2d 992 (3rd Cir. 1948); Commissioner v. Guitar Trust Estate, 72 F.2d 544 (5th Cir. 1934); Lane v. United States, 233 F.Supp. 856 (M.D.Ala., 1964); Cowles v. United States, 50 F.Supp. 242, 99 Ct.Cl. 731 (1943).

The provisions in the will of Guy L. Waggoner creating the trust involved herein vest the trustees with absolute and complete discretion to accumulate or distribute the trust's income.[1] By vir-

---

1. "Within twelve months from the death of my son (W. T. Waggoner, Jr.) * * * the trustees shall divide the then accumulated and undistributed income into as many shares as there are children of my said son then living, and shall likewise, at such time or times and in such manner as they may elect, divide the thereafter realized net income into a like number of shares, allocating * * * one share to each of said children."

   *     *     *     *     *

tue of those provisions the trust created is a complex, or discretionary, trust, and is governed for income tax purposes by Sections 661 and 662 of the Internal Revenue Code of 1954. 26 U.S.C.A. §§ 661, 662.

In pertinent part, the above statutes governing the income tax treatment of the Guy L. Waggoner Trust provide:

"§ 661. Deduction for estates and trusts accumulating income or distributing corpus.

"(a) Deduction.—In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate or trust * * *, the sum of—

"(1) any amount of income for such taxable year required to be distributed currently * * *; and

"(2) any other amounts properly paid or credited or required to be distributed *for* such taxable year; * * *" (Emphasis supplied).

"§ 662. Inclusion of amounts in gross income of beneficiaries of estates and trusts accumulating income or distributing corpus

"(a) Inclusion—Subject to subsection (b), there shall be included in the gross income of a beneficiary to whom an amount specified in section 661(a) is paid, credited, or required to be distributed (by an estate or trust described in section 661), the sum of the following amounts:

"(1) Amounts required to be distributed currently. * * *

"(2) Other amounts distributed.— All other amounts properly paid, credited, or required to be distributed to

"(b) As to each beneficiary who at the time shall be twenty-one years of age, or who shall thereafter attain the age of twenty-one years, the trustees will pay over to such beneficiary, or use for his or her benefit, as they may elect, such part of the net income allocable to such beneficiary in the sole, uncontrolled and final discretion of such trustees shall be for the best interests of such beneficiary."

   *     *     *     *     *

such beneficiary *for* the taxable year * * * (Emphasis supplied).

   *    *    *    *    *    *

"(c) Different taxable years.—If the taxable year of a beneficiary is different from that of the estate or trust, the amount to be included in the gross income of the beneficiary shall be based on the distributable net income of the estate or trust and the amounts properly paid, credited, or required to be distributed to the beneficiary *during any taxable year or years of the estate or trust ending within or with his taxable year.*" (Emphasis supplied).

Because there are no provisions in the trust requiring the trustees to distribute income currently, only subsections (a) (2) of sections 661 and 662 are applicable to determine the manner in which the income tax is to be allocated between the Guy L. Waggoner Trust and its beneficiaries. The two sections are complementary. Section 661 provides for a deduction, and section 662 provides for picking up the deduction by including identical amount as income of the beneficiary for the taxable year in question. The rule has been summarized as follows:

"Income which, in the discretion of the fiduciary, may be either distributed or accumulated is taxable to the fiduciary to the extent that he does not exercise his discretion by either paying or crediting the income to the beneficiary. To the extent that such discretion is exercised, and the income is properly paid or credited to the beneficiaries, the latter are taxable on such amounts." Plimpton v. Commissioner, 135 F.2d 482 (1st Cir. 1943); Commissioner v. Clark, 134 F.2d 159 (2nd Cir. 1943); Commissioner v.

"So long as this trust shall endure, notwithstanding any provision of this will to the contrary, no title, legal or equitable, to any accumulated or undistributed income allocable to the share of any beneficiary, including William Thomas Waggoner, Jr., shall vest in or pass to any such beneficiary *until actually paid to or for the use of such beneficiary by the trustees.* * * *" (Emphasis supplied)

Guitar Trust Estate, 72 F.2d 544 (5th Cir. 1934); Lynchburg Trust & Savings Bank v. Commissioner, 68 F.2d 356 (4th Cir. 1934); Lane v. United States, 233 F. Supp. 856, 858 (M.D.Ala., 1964); Higginson v. United States, 81 F.Supp. 254, 113 Ct.Cl. 131 (1948); Cowles v. United States, 50 F.Supp. 242, 99 Ct.Cl. 731 (1943).

Both the deduction for a discretionary trust allowed in section 661(a) (2) and the inclusion of the amount deducted in the beneficiary's income required in section 662(a) (2) of the 1954 Internal Revenue Code apply to "amounts properly paid or credited or required to be distributed *for* such taxable year." (Emphasis supplied). Section 662(c) provides, however, that a beneficiary whose tax year differs from that of the trust is to include in his gross income only such net income of the trust as was "properly paid, credited, or required to be distributed to the beneficiary *during* any taxable year or years of the estate or trust ending within or with his taxable year." (Emphasis supplied).

Counsel for defendant admit in their brief that "The difference in the words 'for' and 'during' is clearly substantial," and contend that the usage of "during" in section 662(c) is an inadvertent carry-over from the Internal Revenue Code of 1939, and should yield to the clear language of sections 661(a) and 662(a).

It appears to the court that the conflict did arise when the 1954 Code was drafted. The use of the conflicting words, "for" and "during" results from the combining of similar provisions in separate statutes of the 1939 Internal Revenue Code into a single provision in the 1954 Code. Prior to 1954, the only statutes providing for different taxable years was restricted to *simple* trusts in which the annual income was required to be distributed currently to the beneficiary.[2] That statute did not apply to *complex* trusts which granted the trustees discretion in accumulating or distributing its income. First National Bank of Boston, 25 B.T.A. 252 (1932);[3] Merton's Federal Law of Income Taxation, Vol. 6, 19 ed., §§ 36.80, 36.127. Before 1954, a single statute created both the deduction allowed to complex trusts for distributions, as well as the inclusion of the distributions in the beneficiary's gross income.[4] Both the deduction and the amount to be reported as income by the beneficiary were determined by the amount of the trust income which was "properly paid or credited *during* such year to any * * * beneficiary." (Emphasis supplied).

In construing the above statute relating to complex trusts, the courts were uniform in holding that to be deemed "properly paid or credited" the trust income must have been irrevocably and unconditionally placed at the disposal of the beneficiary. Frank's Trust of 1931 v. Commissioner, 165 F.2d 992 (3rd Cir. 1948); Plimpton v. Commissioner, 135 F.2d 482 (1st Cir. 1943); Lynchburg Trust & Savings Bank v. Commissioner, 68 F.2d 356 (4th Cir. 1934), cert. den. Helvering v. Lynchburg Trust and

---

2. "Sec. 164. Different Taxable Years.
   "If the taxable year of a legatee, heir, or beneficiary is different from that of the estate or trust, the amount which he is required, under section 162(b), to include in computing his net income, shall be based upon the income of the estate or trust for any taxable year of the estate or trust (whether beginning on, before, or after January 1, 1939) ending within or with his taxable year."

3. Applying the predecessor to section 164 of 1939 Internal Revenue Code, id.

4. "Sec. 162(c). In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary."

Savings Bank, 292 U.S. 646, 54 S.Ct. 773, 78 L.Ed. 1492; Commissioner v. Stearns, 65 F.2d 371 (2nd Cir. 1933), cert. den. 290 U.S. 670, 54 S.Ct. 90, 78 L.Ed. 579; Grant v. Nicholas, 127 F.Supp. 236, 241 (D.Colo.1955); 117 A.L.R. 372, 379. And nunc pro tunc crediting, after the close of the tax year, is not effective to meet the terms of the statute. Guitar Trust Estate v. Commissioner, 34 B.T.A. 857 (1936), on remand from 5th Cir., supra.

" * * * [O]nly that part of the income which is paid or credited during the year may be deducted from the income of the trust and added to that of the beneficiary. The phrase 'paid or credited' is used in opposition to the term 'accumulated'; so that, the amount which is set aside for and made available to the beneficiary, either by actual payment or by credit, may be deducted, but the amount retained or accumulated forms part of the taxable income of the trust." Lynchburg Trust & Savings Bank v. Commissioner, 68 F.2d 356, 359 (4th Cir. 1934).

■ The reasoning behind these earlier statutes and decisions is clear. Where discretionary trusts are involved, the beneficiary has no right to the trust income until the trustees elect to irrevocably and unconditionally place it in the beneficiary's control either by actual payment or credit.

No provision in the will of Guy L. Waggoner is more emphatic than that which provides that the beneficiaries are to have no right to the income until actually paid to them by the trustees.[5]

■ Because of the magnitude of its operations and the accrual method of accounting which it employs, the Guy L. Waggoner Trust was unable to determine its 1962 net income for distribution purposes until its books were closed on January 31, 1963.[6] There is no question that the $10,000.00 distribution made by check to Mrs. Hay on December 1, 1962

was *for* income earned by the trust during November, 1962. There is no question that the distribution to Mrs. Hay by check dated February 1, 1963 was *for* her share of the residue of the net income by the trust during its fiscal year ended November 30, 1962.

Under the terms of § 661(a) (2), therefore, the deduction taken by the trust for the December 1, 1962 and the February 1, 1963 distributions was proper. There is no other provision in the 1954 Code relating to deductions taken by a discretionary trust for distributions to its beneficiaries. The provision found in section 162(c) of the 1939 Code restricting the deduction taken by a complex trust to only such amounts as were distributed *during* its taxable year was not carried over to the 1954 Code. No provision presently exists which dictates the manner in which a *deduction* is to be treated when the taxable year of a complex trust differs from that of its beneficiary.

■ On the other hand, section 662 (c) specifically provides a manner in which the beneficiary is to treat income received from a trust whose taxable year differs from that of his own. He is to report only such income as was properly paid or credited to him *during* the taxable year or years of the trust ending with or within his taxable year. The Federal Income Tax Regulations have made an effort to provide, where the taxable years of the trust and beneficiary differ, that the beneficiary report such amounts of the trust income as were "properly paid, credited, or required to be distributed to the beneficiary *for* any taxable year or years of the estate or trust ending with or within his taxable year." 26 C.F.R. § 1.662(c). While such a provision would complement the deduction provisions of Code section 661 (a), and would simplify the issue presented in the instant case, it is in direct conflict with Code section 622(c), and

---

5. See note 1.

6. "Income of an estate or trust for its taxable year or years is determined in ac-

cordance with its method of accounting and without regard to that of the beneficiary." 26 C.F.R. § 1.662(c).

it is contrary to the historical and only method of reporting income received from a discretionary trust: only as of the time that the beneficiary receives unconditional command of the income. Under such circumstances, to the extent that Treasury Regulation, section 1.662 (c) conflicts with Code section 662(c), it cannot be considered. Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945); Smith v. Commissioner, 332 F.2d 671, 673 (9th Cir. 1964); United States v. Whitney Land Co., 324 F.2d 33, 38 (8th Cir. 1963); Boykin v. Commissioner, 260 F.2d 249, 254 (8th Cir. 1958); Acker v. Commissioner, 258 F.2d 568, 576 (6th Cir. 1958), cert. denied 358 U.S. 940, 79 S.Ct. 346, 3 L.Ed.2d 348, affirmed 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127.

■ Mrs. Hay did not receive either the December 1, 1962, payment or the February 1, 1962, payment *during* the 1962 taxable year of the trust which ended within her 1963 taxable year. Nor was Mrs. Hay "credited" with the two payments during the 1962 taxable year of the trust, as that term has been defined under the cases cited above. Until the time Mrs. Hay irrevocably and unconditionally controlled the proceeds of the two checks, the trustees were vested with the discretion to withhold, accumulate, or otherwise manage the net income of the trust.[7] Notwithstanding the agreement with the trustees, Mrs. Hay had no right to demand or receive the trust income until it was actually paid to her. She had no income until payment occurred. Frank's Trust of 1931 v. Commissioner, 165 F.2d 992 (3rd Cir. 1948); Plimpton v. Commissioner, 135 F.2d 482 (1st Cir. 1943); Commissioner v. Guitar Trust Estate, 72 F.2d 544 (5th Cir. 1934); Lynchburg Trust & Savings Bank v. Commissioner, 68 F.2d 356 (4th Cir. 1934), cert. denied Helvering v. Lynchburg Trust and Savings Bank, 292 U.S. 640, 54 S.Ct. 773, 78 L.Ed. 1492; Commissioner v. Stearns, 65 F.2d 371 (2nd Cir. 1933); Grant v. Nicholas,

127 F.Supp. 236 (D.Colo.1955). The income received by Mrs. Hay from the December 1, 1962 check for $10,000.00 and the February 1, 1963 check for $56,478.-25 drawn on the Guy L. Waggoner Estate Trust constituted amounts which properly should have been included in her 1963 income tax return, and were improperly reported on her 1962 income tax return.

The Court is cognizant that the determination reached herein will result in a delay of one year in reporting the trust income. The situation is not new in this area, however:

"Congress made a change in the later act from what it had provided in the earlier act. Due to this change some income may escape taxation, but this fact is immaterial. The provisions of the later act are clear, and the method of reporting income on the cash basis is well established." First National Bank of Boston, 25 B.T.A. 252, 255 (1932).

## II. THE DEPLETION ISSUE

Since the year 1952, the estate and trust have received oil and gas income. Such receipts have been allocated 27½%, but not to exceed 50% of the net after deducting the expense and carrying charges on such property, to corpus and the balance to income. This method has been followed because there is no provision in the trust instrument which specifies how the income is to be allocated, and therefore Section 33 of the Texas Trust Act has been applied by the trustees to provide the method of allocation described. Vernon's Ann.Tex.Rev.Civ. Stat. art. 7425b–33 (1945).

During its fiscal year ended November 30, 1962, the Guy L. Waggoner Estate realized gross income from oil and gas operations in the amount of $1,153,-581.13. On that amount there was allowable for federal income tax purposes a depletion deduction, comprised partly of percentage depletion and partly of cost depletion, in the amount of $300,499.73.

7. See note 1.

On the Trust's fiduciary income tax return filed for the fiscal year ended November 30, 1962, the trustees claimed a depletion deduction of $293,996.04, a figure corresponding to the amount of oil and gas income treated as trust corpus under Section 33 of the Texas Trust Act. The remaining portion of the depletion deduction allowable, $6,503.69, representing the amount by which cost depletion exceeded percentage depletion on certain of the trust properties, was allocated to the beneficiaries of the trust. Of the $6,503.69 allocated to the beneficiaries, the amount of $1,726.28 was allocated to the plaintiff, Elise W. Hay.

The trust created under the will of Guy L. Waggoner, Deceased, does not apportion the depletion deduction on oil income between the income beneficiaries and trustees. The plaintiffs contend that since the trust does not contain any such provisions, the depletion deduction on oil income must be allocated among the beneficiaries and the trustees proportionately on the basis of the trust income allocable to each, which would entitle them to a depletion deduction of $17,854.46, or such other greater amounts as might be refundable by law should the income received from the trust be determined to be an amount exceeding $65,000.00. The defendant contends that the depletion deduction on the oil and gas income of the trust was properly allocated among the trustees and beneficiaries.

Section 611 of the Internal Revenue Code of 1954 provides in pertinent part as follows:

"§ 611.  Allowance of deduction for depletion.

"(a) General Rules.—In the case of mines, oil and gas wells, other natural deposits, and timber, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under regulations prescribed by the Secretary or his delegate.  * * *

"(b) Special rules.—

*  *  *  *  *  *

"(3) Property held in trust.—In the case of property held in trust, the deduction under this section shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each." 26 U.S.C.A. § 611.

The plaintiffs contend that the language of Code Section 611(b) (3) controls this case.  They allege that there are no "pertinent provisions of the instrument creating the trust," (the will of Guy L. Waggoner) which apportion between them and the trustees the depletion deduction, and that, in the absence of express provisions allocating the depletion allowances, the depletion deduction must be allocated on the basis of the trust income distributed to them.

The plaintiffs further contend that Section 33 of the Texas Trust Act, Tex. Rev.Civ.Stat. art. 7425b–33 (1945), is inapplicable for trust depletion purposes. They contend that Section 33 is intended merely to provide a means of accounting for the mineral receipts and to create a depletion reserve for the trust.  They distinguish that procedure from the depletion deduction established for tax purposes in Section 611(b) (3) of the Code.

Section 33 of the Texas Trust Act provides:

"Where any part of the principal consists of any interest in lands, including royalties, overriding royalties, and working interest, from which may be taken timber, minerals, oil, gas or other natural resources, and the trustee or tenant is authorized by law or by the terms of the transaction by which the principal or trust was established to sell, lease, or otherwise develop such natural resources, and no provision is made for the disposition of the proceeds thereof, such proceeds, if received as delay rentals on a lease

shall be deemed income, but if received as consideration, whether as bonus or consideration for the execution of the lease or as royalties, overriding or limited royalties, oil payments or other similar payments, received in connection with the physical severance of such natural resources, shall be apportioned to principal and income as follows: 27½% of the gross proceeds (but not to exceed 50% of the net, after deducting the expense and carrying charges on such property) shall be treated as principal and invested or held for the use and benefit of the remainderman, and the balance shall be treated as income subject to be disbursed to the tenant or person entitled thereto. Such disposition of proceeds shall apply whether the property is producing or non-producing at the time the trust becomes effective."

As an alternative, the plaintiffs contend that should Section 33 of the Texas Trust Act be held to apply to the Guy L. Waggoner Trust, then Section 1.611–1–(c) (4) of the Federal Tax Regulations is an unlawful extension of Code Section 611(b) (3) because it recognizes depletion reserves created for trusts by local law to be as effective for tax depletion deduction purposes as provisions in the trust instrument which specifically allocate the tax deduction for depletion.

Section 1.611–1–(c) (4) of the Federal Tax Regulations provides in pertinent part:

"(4) Mineral or timber property held in trust. If a mineral property is held in trust, the allowable deduction for depletion is to be apportioned between the income beneficiaries and the trustee on the basis of the trust income from such property allocable to each, unless the governing instrument (or local law) requires or permits the trustee to maintain a reserve for depletion in any amount. In the latter case, the deduction is first allocated to the trustee to the extent that income is set aside for a depletion reserve, and any part of the deduction in excess of the income set aside for the reserve shall be apportioned between the income beneficiaries and the trustee on the basis of the trust income (in excess of the income set aside for the reserve) allocable to each. For example:

"(i) If under the trust instrument or local law the income of a trust computed without regard to depletion is to be distributed to a named beneficiary, the beneficiary is entitled to the deduction to the exclusion of the trustee.

"(ii) If under the trust instrument or local law the income of a trust is to be distributed to a named beneficiary, but the trustee is directed to maintain a reserve for depletion in any amount, the deduction is allowed to the trustee (except to the extent that income set aside for reserve is less than the allocable deduction). The same result would follow if the trustee sets aside income for a depletion reserve pursuant to discretionary authority to do so in the governing instrument."

The issues thus framed call for the Court to decide first, whether the terms of the trust instrument, within the meaning of Section 611(b) (3) of the Code, apportion the depletion deduction between the beneficiaries and the trustees; second, whether Section 33 of the Texas Trust Act applies to the trust; and third, whether Section 1.611–1(c) (4) of the Federal Tax Regulations is invalid. For the reasons which follow, the Court concludes the trust instrument does apportion the depletion deduction within the meaning of Section 611(b) (3), Section 33 of the Texas Trust Act does apply to the trust, and Section 1.611–1(c) (4) of the Regulations is valid.

While Section 611(b) (3) of the Code provides that the depletion deduction allowed to trusts "shall be apportioned between the income beneficiaries and the trustees in accordance with the pertinent provisions of the instrument creating the trust," it does not require the deduction to be allocated in specific terms or express words.

Where the settlor fails to specifically allocate the depletion deduction in the trust instrument, as he did in this case, it is the duty of the court to ascertain, if possible, from the words used in the trust instrument the settlor's intent with regard to such allocation.[8] " * * * As in the case of any other term or condition of a trust instrument, if the intention of the trustor can be determined from an examination of the pertinent provisions of the instrument that intention will be given effect whether or not stated in express terms." Upton v. Commissioner, 283 F.2d 716, 721 (9th Cir. 1960),[9] cert. denied 366 U.S. 911, 81 S. Ct. 1086, 6 L.Ed.2d 236; Commissioner v. Netcher, 143 F.2d 484, 488 (7th Cir. 1944), cert. denied 323 U.S. 759, 65 S. Ct. 92, 89 L.Ed. 607.

There are provisions in the will of Guy L. Waggoner which indicate that it was his intent to preserve the corpus of the trust which he created. He directed that the trust principal should remain intact until distributed to his great-grandchildren, and that no part of the corpus should ever be distributed to his son.[10] He empowered the trustees with uncontrolled discretion [11] to continue his ranch-

8. See Upton v. Commissioner, 283 F.2d 716 (9th Cir. 1960), cert. denied 366 U.S. 911, 81 S.Ct. 1086, 6 L.Ed.2d 236; Commissioner v. Netcher, 143 F.2d 484 (7th Cir. 1944), cert. denied 323 U.S. 759, 65 S.Ct. 92, 89 L.Ed. 607; Kettler v. Atkinson, 383 S.W.2d 557 (Tex.1964); Huffman v. Huffman, 161 Tex. 267, 339 S.W. 2d 885 (1960); St. Marks Episcopal Church v. Lowry, 271 S.W.2d 681 (Tex. Civ.App. Fort Worth 1954, err. ref. n. r. e.).

9. The instant case is similar to Upton v. Commissioner, supra, note 8: " * * * [t]here is no provision in that will which in express terms grants all depletion allowances to the trustees or apportions them between the income beneficiaries and the trustees. The will does not use the word 'depletion' and does not expressly provide for the apportionment or allocation of anything for income tax purposes."

"There is nothing in section 23(m) [identical to § 611(b) (3)], however, to indicate that an apportionment of depletion allowances as therein referred to must be stated in express terms. As in the case of any other term or condition of a trust instrument, if the intention of the trustor can be determined from an examination of the pertinent provisions of the instrument that intention will be given effect whether or not stated in express terms. * * * "

10. "The principal of my estate shall remain intact and subject to the terms of this trust during the lives of my son, W. T. Waggoner, Jr., and my son's children above named and those hereafter born to him prior to my death, and twenty one years after the death of the last survivor of my said son and his said children living at my death, and, at that time I direct the trustees to terminate the trust and pay over and deliver the balance of my estate, both principal and income, to the bodily heirs of my son's children * * *."

*      *      *      *      *

"Provided that the trustees shall never pay out to or use for any beneficiary more than such beneficiary's accumulated or undistributed income, unless the trustees in their sole discretion and judgment may determine that the net income of my estate allocable to such beneficiary or beneficiaries is insufficient or inadequate for the upkeep, maintenance, education and general welfare of such beneficiary or beneficiaries, in which event I authorize and hereby empower the trustees to resort to the corpus for such purposes to the extent necessary, provided further that in no event shall any part of the corpus ever be paid over to my son, William Thomas Waggoner, Jr."

The intent to preserve and keep the trust corpus intact has been held to warrant the trustee's taking the deduction. Upton v. Commissioner, 283 F.2d 716 (9th Cir. 1960), cert. denied 366 U.S. 911, 81 S.Ct. 1086, 6 L.Ed.2d 236; Commissioner v. Netcher, 143 F.2d 484 (7th Cir. 1944), cert. denied 323 U.S. 759, 65 S.Ct. 92, 89 L.Ed. 607; Newbury v. United States, 102 Ct.Cl. 192, 57 F.Supp. 168 (1944), cert. denied 323 U.S. 802, 65 S.Ct. 559, 89 L.Ed. 640.

11. "The trustee may make division or distribution of my estate in kind or in cash, or partly in kind and partly in cash, and the determination of the trustees as to the fairness and equitableness of any such devision or distribution shall be conclusive upon all persons now or hereafter interested in my estate whether for life or in remainder."

*      *      *      *      *

ing and oil and gas operations, and to use such principal and income of the trust as in their judgment was necessary to perform those operations.[12] Only "income" was allowed to be distributed to the beneficiaries.[13]

■ Once it is established that it was the settlor's intent to preserve the corpus and keep it intact, it is presumed that the testator intended to create a depletion reserve, and the trustees are entitled to the depletion deduction to the extent provided by law.[14] There is some authority that the mere vesting of complete discretion in the trustees with regard to the income and principal is of itself sufficient to entitle the trustees to the deduction.[15]

■ If, however, the intent of the testator regarding the apportionment of depletion allowances between the trust and its beneficiaries cannot be determined from the provisions of the trust instrument, or if the court takes the view that depletion must be allocated in specific terms in the instrument (See Estate of Little v. Commissioner of In-

ternal Revenue, 274 F.2d 718 (9th Cir. 1960)), the Court must determine whether any local law exists which affects the trust transaction. 26 C.F.R. § 1.611–1 (c) (4), and cases, note 18, infra.

Turning then to Texas law, one finds that any person establishing a trust in Texas consisting of "timber, minerals, oil, gas or other natural resources" has the right to determine how the income, expenses and principal are to be apportioned between the tenants and remaindermen. Tex.Rev.Civ.Stat. art. 7425b– 26 (1945). When he fails to do so, Section 33 of the Texas Trust Act governs the ascertainment of income and principal and the apportionment of income, expenses and principal among the tenants and remaindermen. Tex.Rev.Civ.Stat. art. 7425b–33, (1945), St. Marks Episcopal Church v. Lowry, 271 S.W.2d 681, 684 (Tex.Civ.App. Fort Worth 1954, err. ref'd n. r. e.)

Section 33 is a statutory enactment of a duty which the Court of Appeals for the Fifth Circuit recognizes is imposed upon all trustees to preserve a trust, the

---

"It is my will and direction that the foregoing powers and authorities given to my trustees shall not be exclusive of any other powers and authorities necessary or advisable for the proper administration of my estate, but all other powers and authorities I do confer upon my trustees and executors whether or not named, to the same extent as if I were still living, it being my intention that the sole and absolute control of any and all of my estate shall be and is hereby vested in my trustees and executors."

See also note 1, supra.

Section 1.611–1–(c) (4) appears to contemplate that this power of discretion alone may be sufficient to entitle the trustee to the deduction. See example (ii). This view is supported in Commissioner v. Saltonstall, 124 F.2d 110 (1st Cir. 1941). However, Fleming v. Commissioner, 43 B.T.A. 229, affirmed 5th Cir., 121 F.2d 7 (1941), holds that discretion vested in the trustees is not an "allocation" within the meaning of the statute.

12. "(1) To continue the operation of any property or properties or businesses or oil or gas lease or leases or ranches that I may own or be operating at the time of my

death, and to make all purchases, sales or exchanges in connection with their operation, so long as, in the judgment of my executors and trustees, it is to the best interest of my estate to do so, *and to use the principal and or income of my estate in their operations.*"

In Commissioner v. Netcher, 143 F.2d 484 (7th Cir. 1944), cert. denied 323 U.S. 759, 65 S.Ct. 92, 89 L.Ed. 607; and in Newbury v. United States, 102 Ct.Cl. 192, 57 F.Supp. 168, 174 (1944), cert. denied 323 U.S. 802, 65 S.Ct. 559, 89 L.Ed. 640, language in the trust instrument showing the testator's intent to keep the corpus intact, and powers delegated to the trustees, authorizing him to incur a large indebtedness in expanding the capital assets of the corpus, were emphasized by the courts in determining that it was the testator's intent to provide for a depreciation reserve.

13. See note 1, supra.

14. See note 10, supra.

15. See Commissioner v. Saltonstall, 124 F. 2d 110 (1st Cir. 1941); Fleming v. Commissioner, 43 B.T.A. 229, affirmed 121 F. 2d 7 (5th Cir. 1941); 26 C.F.R. § 1.611– 1–(c) (4) example (ii).

corpus of which contains wasting assets.[16]

■ The trust created in the will of Guy L. Waggoner contains no provisions for the disposition of proceeds received from the oil and gas producing interests owned by the trust and all distributions are within the sole discretion of the trustees. It follows that Section 33 of the Texas Trust Act applies to the trust.[17]

Section 33 of the Texas Trust Act is not intended to be merely a procedure for accounting for the income receipts of the trust as the plaintiff contends. That the percentages set out in Section 33 were enacted with the federal income tax depletion allowances in mind is clear from the historical note following the statute which quotes Section 33 as it existed prior to amendment in 1945. It stated in part that the proceeds were to be apportioned to principal and income as follows:

"Such percentage thereof as is permitted to be deducted for depletion under the then existing laws of the United States of America for federal income tax purposes shall be treated as principal and invested or held for the use and benefit of the remainderman, and the balance shall be treated as income subject to be disbursed to the tenant or person entitled thereto, * * *"

■ It appears, therefore, that Section 33 was enacted not only for the purpose of providing a reserve for trusts with wasting natural resources as part of their assets, but also for the purpose of obtaining the maximum advantage through tax depletion allowances for the trusts.

■ The plaintiffs insist that by allowing local law, which creates a reserve for depletion, and thereby entitling the trustee to a deduction to the extent of the income so reserved, the Regulations unreasonably extend the language of the Code and are therefore invalid. The Supreme Court "has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons." See e. g., Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948); Fawcus Machine Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397 (1931).

Congress, with regard to Section 611 of the Code, made it clear that it invited regulations supplementing this phase of the Code: " * * *, such reasonable allowance in all cases to be made under regulations prescribed by the Secretary or his delegate." 26 U.S.C.A. § 611(a). This delegation of authority is a result of the complex nature of the depletion problem with relation to income taxes, and the Supreme Court has held that because

---

16. "It is basic trust law that the trustee has a duty to preserve the principal of the trust if it is a wasting asset, unless provided otherwise in the trust instrument. This duty entails the setting aside as part of corpus so much of the trust income as is necessary to replace the depreciation and depletion of the property comprising the trust corpus." Levin v. Commissioner, 355 F.2d 987, 989 (5th Cir. 1966).

17. In addition to the above authorities requiring Section 33 to be applied to the trust, that is an additional consideration that Section 33 was incorporated by reference. The will of Guy L. Waggoner · provided in Article XV:

"I hereby specifically direct that my will and all terms and provisions thereof shall be construed and determined according to the rules of substantive law of the State of Texas exclusively, regardless of where any administration or ancillary proceedings may be had and in whatever State."

The above incorporating language, however, is not as specific as that set out in Tom R. Booth Trust v. Commissioner, decided Sept. 27, 1962 (P–H T.C. Memo, Dec., pars. 63, 265).

of the highly technical and involved factors entering into a practical solution of the problem of depletion in administration of tax laws, the administrative powers to deal with it equitably and reasonably should be interpreted so as to strengthen rather than to weaken them. Helvering v. Wilshire Oil Co., 308 U.S. 90, 102–103, 60 S.Ct. 18, 84 L.Ed. 101 (1939).

The provisions of Section 1.611–1(c) (4), recognizing depletion reserves created by local law to be as effective for tax deduction purposes as allocating provisions in the trust instrument, are reasonable. Identical provisions in the companion area of depreciation have been held not to conflict with the Code. Dusek v. Commissioner, 45 T.C. 355 (1966). Other cases have recognized local law as controlling of the tax consequences when it requires the creation of a depletion or depreciation reserve.[18]

The treatment of the problem by the Regulations is equitable as well as reasonable. When trustees are required by the trust instrument or local law to set aside a certain portion of the income from the trust's oil and gas operations in order to replace the value of the corpus assets which have been converted, a tax-free restoration of the converted capital is accomplished. This permits a preservation of the corpus for the remainderman. The vested owners of the trust assets, the trust and the remaindermen, receive the benefit of the deduction to replace their capital which has been converted; no tax is paid by them on their return of capital. The beneficiary on the other hand receives the benefit of any depletion deduction, which is in excess of the replaced capital of the trust.

This opinion will serve as findings of fact and conclusions of law. Fed.R.Civ. P. 52(a). Judgment will be entered in accordance therewith.

---

18. Grey v. Commissioner, 118 F.2d 153 (7th Cir. 1941), 141 A.L.R. 1113; Laflin v. Commissioner, 69 F.2d 460 (7th Cir. 1934); Dixon v. Commissioner, 69 F.2d 461 (7th Cir. 1934), cert. denied 293 U.S. 560, 55 S.Ct. 72, 79 L.Ed. 661; Newbury v. United States, 57 F.Supp. 168, 102 Ct. Cl. 192 (1944), concur. opin., cert. denied 323 U.S. 802, 65 S.Ct. 559, 89 L.Ed. 640; Freuler v. Lelvering, 291 U.S. 35, 54 S. Ct. 308, 78 L.Ed. 634 (1934), decree of State (Cal.) court; Upton v. Commissioner, 283 F.2d 716 (9th Cir. 1960), cert. denied 366 U.S. 911, 81 S.Ct. 1086, 6 L. Ed.2d 236, decree of state (Cal.) court.