INSLEE A. HOPPER as Executor of the Estate of GERTRUDE
THOMAS GARDNER, Deceased, Petitioner

v.

GOVERNMENT OF THE VIRGIN ISLANDS, REUBEN
WHEATLEY, Commissioner of Finance, Respondent

Civil No. 74-124

ESTATE OF JOHN LIVINGSTON THOMAS by WILLIAM W.
BAILEY, Executor, Petitioner

v.

REUBEN B. WHEATLEY, Commissioner of Finance, Respondent

Civil No. 74-285

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 10, 1976

557

PALLME, ANDUZE & MITCHELL, ESQS., (WILLIAM A. PALLME of counsel), St. Thomas, V.I., *for plaintiff Hopper*

GORDON S. GILMAN, ESQ., Assistant Attorney General, St. Thomas, V.I., *for respondent Wheatley*

BAILEY, WOOD & ROSENBERG, ESQS., (WILLIAM W. BAILEY, ESQ.), St. Thomas, V.I., *for petitioner Bailey*

CHRISTIAN, *Chief Judge*

## OPINION

John Livingston Thomas died testate on May 25, 1963. The cases here consolidated for trial grow out of certain payments made by his executor in accordance with the terms of his will.

In each of the cases captioned above, the Commissioner of Finance of the Government of the Virgin Islands, the taxing authority in this district, is named as respondent. Petitioner in the case docketed at Civil No. 74-124 is Inslee

Hopper, Executor of the Estate of Gertrude Thomas Gardner, sister of decedent John Livingston Thomas, whereas petitioner in the case docketed at Civil No. 74-285 is the Executor of the Estate of John Livingston Thomas, William W. Bailey. Sitting in the middle of the two petitioners, with apron spread wide open, is respondent. His only interest in these cases is which of the two estates shall pay additional income tax and penalties for the calendar years 1967, 1968, 1969, 1970 and 1971.

In paragraph "THIRD", his will, decedent John Livingston Thomas directed his executor to pay to his sister, monthly, the sum of $1,500 "together with any funds necessary to pay carring (sic) charges on any dwelling house or business property" occupied by her. According to the will these payments were to commence upon his death and were to continue "until the final adjudication of [his] estate and the payment of the residuary estate over to Trustees" of a trust set up in the will. We are here concerned not with the carrying charges, if any were paid, but merely the $18,000 paid to decedent Gardner in each of the years in question save 1971 when she received only $9,000. Gertrude Gardner died, resident in the Virgin Islands, on July 21, 1971.

The Thomas estate did not file income tax returns for the years in question until sometime early in the year 1973. At that time returns for the year 1963 to 1972, inclusive, were filed simultaneously. In those returns the estate claimed a deduction for the amounts paid to Gardner in her lifetime. Initially, it seems, respondent accepted the returns of the Thomas estate as filed and, in writing, so advised the executor of that estate. The government then proceeded against the Gardner estate. Gardner had never reported the payments from the Thomas estate as income. Still later, however, the government, playing it safe, reversed the position it had taken with respect to the tax

559

returns of the Thomas estate and sent the executor of the estate a so-called "90-day letter". In so doing, the government undertook to deny the Thomas estate the benefit of the deductions as claimed on its returns, for payment to Gertrude Gardner. Thus it is that each of the two estates finds itself before the Court seeking redetermination of the tax liability the government would impose.

I feel compelled to mention, but only incidentally, that the post-trial brief submitted on behalf of the Estate of John Livingston Thomas suggests that the $1,500 monthly payments to Gertrude Gardner were actually commenced on May 25, 1963 and continued thereafter on the 25th day of each succeeding month, until her death in 1971. The inquiry of interest, at least to me, is what was the tax treatment accorded these payments prior to the calendar years here in dispute. Were the payments made to Gertrude Gardner out of income or out of corpus or did those payments partake of both income and corpus? Did the estate claim a deduction, or who declared the payments as income, Gardner in life, or the Thomas estate? So far as my memory serves me, the trial record answers those questions with the deepest silence only. At all costs the government has assessed tax deficiencies against each of the two estates for the calendar years 1967–1971, inclusive. It is only to these years that the remarks which follow will be addressed.

The basic question for determination is whether the payments made to Gertrude Gardner came from current income for the years in which they were made or whether such payments, or some portion or portions of them, were made from income accumulated in prior years or from corpus. If out of current income, the estate of John Livingston Thomas would be entitled to a deduction; if accumulated income or corpus, then the estate of Gertrude Gardner would have the stronger claim to that cherished boon

of the federal internal revenue laws, I.R.C., 26 U.S.C. §§ 661 and 662.[1]

■■ It is clear that the executor of the Thomas estate was empowered to make the payments to Gertrude Gardner from any of the sources above mentioned or any combination of them. The testator simply directed that the payments be made to his sister monthly in the fixed sum. He did not qualify or condition that mandate in any way. In-

---

[1] I.R.C., 26 U.S.C. §§ 661 and 662 are set out herewith in pertinent parts:

§ 661(a) Deduction.—In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate or trust (other than a trust to which subpart B applies), the sum of—

(1) any amount of income for such taxable year required to be distributed currently (including any amount required to be distributed which may be paid out of income or corpus to the extent such amount is paid out of income for such taxable year) ; and

(2) any other amounts properly paid or credited or required to be distributed for such taxable year;

but such deduction shall not exceed the distributable net income of the estate or trust.

§ 662(a) Inclusion.—Subject to subsection (b), there shall be included in the gross income of a beneficiary to whom an amount specified in section 661(a) is paid, credited, or required to be distributed (by an estate or trust described in section 661), the sum of the following amounts:

(1) Amounts required to be distributed currently.—The income for the taxable year required to be distributed currently to such beneficiary, whether distributed or not. If the amount of income required to be distributed currently to all beneficiaries exceeds the distributable net income (computed without the deduction allowed by section 642(c), relating to deduction for charitable, etc., purposes) of the estate or trust, then, in lieu of the amount provided in the preceding sentence, there shall be included in the gross income of the beneficiary an amount which bears the same ratio to distributable net income (as so computed) as the amount of income required to be distributed currently to such beneficiary bears to the amount required to be distributed currently to all beneficiaries. For purposes of this section, the phrase "the amount of income for the taxable year required to be distributed currently" includes any amount required to be paid out of income or corpus to the extent such amount is paid out of income for such taxable year.

(2) Other amounts distributed.—All other amounts properly paid, credited, or required to be distributed to such beneficiary for the taxable year. If the sum of—

(A) the amount of income for the taxable year required to be distributed currently to all beneficiaries, and

(B) all other amounts properly paid, credited, or required to be distributed to all beneficiaries

exceeds the distributable net income of the estate or trust, then, in lieu of the amount provided in the preceding sentence, there shall be included in the gross income of the beneficiary an amount which bears the same ratio to distributable net income (reduced by the amounts specified in (A)) as the other amounts properly paid, credited or required to be distributed to the beneficiary bear to the other amounts properly paid, credited, or required to be distributed to all beneficiaries.

deed the positive language used gave the clear impression that this was to be considered a first charge against his estate throughout the administration thereof. There was some attempt at the hearing to introduce confusion in what seems otherwise a plain issue by offering comparison with sums paid to the widow of the testator and the different manner in which payments made to her were treated by the estate. I must regard as irrelevant, however, whatever the executor may have done in the way of payments made to the widow during the administration of the estate. Such payments as were, in fact, made must have been laid out on some authority other than the will for I find no such direction in that instrument.

In each of the calendar years under consideration, there was considerable income flowing into the estate principally from rentals of real property owned by decedent, as well as by way of dividends paid on stocks, and interest income. It is my conclusion that all of these may be combined in determining the distributable net income of the estate in each year.[2] It is my finding that the taxable income of this estate, before any deductions were taken for distribution of income or for any personal exemptions, was more than sufficient to have met the $1,500 monthly payments to Gertrude Gardner. As I view the situation, payments are made from current income if, when we consider the total income for the calendar year in question, the distributable net income is sufficient to cover the payment, even though it may have been that in one or more months during the year the money came out of a source other than the current distributable net income. See, in this regard, Mott v. U.S. 462 F.2d 512, 518–519 (Ct. Clms, 1972); Hay v. United States, 263 F.Supp. 813, (N.D.

---

[2] Distributable net income, the definition of which appears at section 643 of the Internal Revenue Code, 26 U.S.C., but is too lengthy for reproduction here, is essentially the taxable income of an estate or trust before deductions are taken and exclusions made for certain fiscal items.

Texas, 1967); 6 Merten's Law of Federal Income Taxation 1968 Revision, § 3673, pp. 193–194.

For the year 1967, there was distributable income of $38,559 available. In 1968 the estate ran a deficit of approximately $2,500. In this year, however, there were major payments to Adelaide Thomas, the widow, totalling $35,000. Treating, as I believe I must, the $18,000 payment to the decedent estate as a priority charge against the estate, I find there was, in that year, more than ample distributable net income to meet the Gardner payment. In 1969, there was at least $36,215 available for distribution. Even the $10,000 payment in that year to the widow could not have so depleted the income that there was not a sufficient fund from which Gardner could have been paid. In 1970 the estate paid out some $8,713 (in all of this I am using round figures) more than it had taken in. Taking into consideration, however, that $24,660 had been paid in that year to Adelaide Thomas, the $18,000 paid to Gertrude Gardner I find to have come from the current income of that year since this was the payment with the priority, and had to be paid, a status not enjoyed by payment to the widow. In the year 1971 because of the fact that it was in this year that Gertrude Gardner died and the payments stopped upon her death, as the will directed, she received only $9,000. Clearly this was out of distributable net income as in that year there was more than the $42,000 which could properly be so classified.

In his post trial memorandum counsel for the executor of the Estate of Gertrude Gardner cites, Mott v. United States, supra. That case, in discussing I.R.C. §§ 661 and 662, makes mention of a "tier system", as set up by the statutes under which two general types of beneficiaries are categorized in order to allocate income between them for tax purposes. The nature of payments received by a beneficiary from a fiduciary is determinative of the assignment

of said beneficiary to the first or second tier. Payments such as those made to Gertrude Gardner (which may be closely analogized to an annuity) are, according to subsections (a) (1) and (2) of both I.R.C. §§ 661 and 662, indicative of Ms. Gardner's status as a first-tier beneficiary, with the consequence that, up to the limits of distributable net income, said payments are presumed to have come from current income.

Whether or not we turn to the "tier system" or the principle of an annuity, we reach the same result. The payments to Gertrude Gardner were required to be made before any other distributions, not including those for proper expenses, were met. The estate of John Livingston Thomas has satisfied its burden of proving that it is entitled to a deduction for the payments made to Gardner in each of the questioned years. It unquestionably follows then that the entire amount received by Gardner for each year must be considered income and should have been reported by her as such on her income tax returns for the five calendar years under review.

■ The executor of the Gardner estate argues that even if all or a part of the payments received by his decedent is considered to be taxable income, he should be allowed a proportionate share of the depreciation which the estate claimed on its returns. I see no authority for such an allowance, nor do I perceive any basis on which there is entitlement to such depreciation. Consequently I disallow it.

In support of his contention that the Gardner estate is the one that should properly bear the tax liability, the executor of the Thomas estate urges that in a settlement reached after the death of Gertrude Gardner her estate was paid the sum of $30,000. The suggestion is that the sum so paid was settled upon that estate in recognition of that fact that it would have to satisfy the tax demands of the Government of the Virgin Islands. I acknowledge this

to be a likely possibility although I do not need to so find. I reach the conclusion of the likelihood of the notion because it is beyond doubt that the Thomas estate had faithfully paid Mrs. Gardner the $1,500 per month throughout the pendency of the estate and up to the time of her death. It is equally beyond controversy that the will directed the cessation of all monthly payments to her upon her death. By the time of the settlement Gertrude Gardner was dead and buried. The Thomas estate was not obliged or authorized to make any direct payment to the Gardner estate and certainly not to bestow an outright gift. It may well be that the executor of the estate of John Livingston Thomas read paragraphs "THIRD" and "ELEVENTH (4)" of the will as authorizing him to meet that decedent's sister's tax liability. This speculation is beside the point, however, in view of my findings and conclusions above.

Tacked on to the prayer at the end of the memorandum on behalf of the executor of the Gardner estate is the request that the "25% penalty in the Notice of Deficiency sought to be assessed pursuant to IRC Section 6651, be disallowed". One gathers that the request was dropped "in passing" as it was scarcely mentioned in the body of the brief and certainly no arguments were advanced in its support. At the risk of considering what may not have been seriously broached, I feel that a few words ought to be said for I view the prayer in earnest, and recognize its merit.

█ █ It is well settled that the penalty mentioned will be imposed whenever it is found that the taxpayer's shortcoming resulted from willful neglect. The outcome is otherwise if the taxpayer meets the burden of proving that the failure to comply with the tax law was due to reasonable cause. IRC § 6651(a); Treasury Regulations, 26 CFR § 301.6651-1. In Haywood Lumber & Mining Co. v. Commissioner of Internal Revenue, 178 F.2d 769 (CA 2, 1950) it was held, on review of a tax court decision, that reliance

upon an accountant versed in tax matters constituted reasonable cause (and hence, the absence of willful neglect) for failure of a corporation to file personal holding company tax returns. Considering the state of the law, the Court of Appeals for the Second Circuit observed, at p. 771, that

[t]he courts have recognized that reliance on the advice of counsel, or of expert accountants, sought and received in good faith is "reasonable cause" for failing to file a tax return. We think those cases are correctly decided. . . .

Accord, In Re Fisk's Estate, 203 F.2d 358, 359 (CA 6, 1953), and other cases cited therein. The In Re Fisk's Estate court defined "reasonable cause" as, simply, ". . . nothing more than the exercise of ordinary business care and prudence." Id. at 359. In the case of Mrs. Gardner I find that reasonable cause has been established. She exercised the ordinary care and prudence that is reasonably to be expected of a business person. She consulted a qualified accountant Foster Baynes, who testified, seeking his direct advice on whether or not the payments she was receiving from her late brother's estate were properly considered income to her and thus should be reported on her tax returns. This was the accountant who, it seemed, customarily prepared her tax return. Mr. Baynes advised Mrs. Gardner that she need not include the payment as income. He went beyond that, according to his uncontroverted testimony, and conferred with an officer of the tax division of the Virgin Islands Department of Finance, and that official concurred in the conclusion reached by Baynes. Gertrude Gardner then, in good faith, relied on the advice given her by Baynes. Then too, the inordinate delay on the part of the Thomas estate in filing its returns, claiming the payments as a deduction militates against the finding of willful neglect on Gardner's part. Moreover with good reason she could have thought and assumed that her brother intended

that whatever the tax consequences of the payments being made to her, his estate would ultimately bear them. After all, the will provided, as we have seen, that the executor was to pay carrying charges on her dwelling house, as well as on any business property she might occupy. Since the same instrument also gave to the executor broad powers "to determine what expenses, costs, taxes and charges of any kind shall be charged against income and what against principal," and the decision so made by the executor was to be conclusive and binding "on all parties in interest;", absent notice from the executor that she was expected to pay income tax on the amounts received, she might indeed have reached the sound judgment that any tax liability would be a charge of the Thomas estate.

██ Accordingly, I am of the opinion that any penalties which might be imposed where a taxpayer's failure to comply with the law was found to be due to willful neglect rather than to reasonable cause should not be assessed against the taxpayer in the case at bar, the estate of Gertrude Thomas Gardner.